BELL v. THE MACCABEES.—82 S. W. (2d) 229.

Middle Section. February 7, 1935.

Petition for Certiorari Denied by Supreme Court, May 17, 1935.

642

Calhoun & Matthews, of Memphis, for appellant.
W. M. Hannah and J. W. Stone, both of Harriman, for appellee.

FAW, P. J.   This is a suit brought on May 29, 1933, by John Edward Bell, a resident citizen of Fentress county, Tennessee, against The Maccabees, a fraternal benefit association incorporated under the laws of the state of Michigan, but licensed to do business, and doing business, in the state of Tennessee, to recover disability benefits under a "benefit certificate" issued by the defendant to the complainant on October 1, 1931.

The benefit certificate constituted a combination of life, accident, and disability insurance, viz., $5,000 life insurance and $1,000 in the event of loss by accident of one hand at or above the wrist, one foot at or above the ankle, or complete loss of the sight of one eye.

The contract of defendant to pay disability benefits was contained in a rider, called "supplementary agreement," bearing the same date as the certificate and attached thereto, which rider provided as follows:

"The Maccabees Further agree and if while the above numbered certificate is in full force and effect, and before default in the payment of any rate, the Association receives due proof that the member, as the result of injury or disease occurring or originating at least one year after the issuance of this supplementary agreement, and before the member attains age 60, has become totally and permanently disabled, by other than his own illegal, reckless, or foolhardy act, from performing or directing his usual labor or business, and from performing or directing any and all kinds of labor or business, whether such directing is his customary occupation or not, the Association will allow the following benefits in lieu of the permanent total dis-

ability benefit provided on Page 1 of the above-numbered certificate.

"1. Beginning with the rate due after receipt of such full and complete proof of permanent total disability the Association will waive payment of each subsequent rate becoming due during continuance of such disability.

"2. Commencing the first day of the second calendar month from the receipt of such proof, the Association will pay each month during the continuance of such disability, to the member or to such person as may be found by the Association to have the care of the person of the member, 1% of the face amount of the benefit certificate mentioned above ($10.00 per $1,000). The member shall not have the right to commute such monthly payments. If there be any indebtedness under the certificate, the interest on such indebtedness shall, if not otherwise paid, be deducted from the payments hereunder."

The aforesaid "supplementary agreement" contained other provisions which are not pertinent to the present controversy.

The liability of the defendant for disability benefits was dependent upon the payment by the complainant of specified premiums (called "rates" in the certificate) at stated periods, unless waived by the defendant pursuant to certain provisions of the certificate to that end.

In addition to the statement of the issuance of the certificate and its terms and provisions, complainant alleged in his bill that all premium rates and dues under said policy had been paid, or the payment waived by the defendant, up to the date of the filing of the bill, and then stated the facts upon which he based his claim to a recovery as follows:

"Complainant shows that on the 20th day of June, 1932, he had an accident, in which he lost and had severed one foot as a result of which Complainant was compelled to walk on crutches, was having an artificial limb made and was able to carry on his business as editor of a paper and was able to go on with his job of printing and publishing his paper.

"Complainant shows that on the third day of February, 1933, while in the condition above mentioned and while performing his regular duties walking on crutches at his place of business and attending to business he fell and permanently injured himself, injuring his head and spine after which he has been rendered totally helpless to attend to his business and was forced by said accident to withdraw from all business activity since the date of the accident and is compelled to have some one to attend to him at all times.

"Complainant avers that the injury will continue as long as he lives and no hope of his being any better, and that he is permanently and totally disabled.

"Complainant avers that under the terms and conditions of the said policy that he is entitled to recover the lump sum of $2500 or in lieu

thereof, as stated in the attached rider $50 per month during the remainder of his life, but if complainant is allowed to elect he will take the $50 per month during the remainder of his life.

"Complainant shows that due proof of permanent total disability has been made to the defendant and that it has refused absolutely to make settlement under the said policy.

"The original benefit certificate No. 1117074 will be filed on or before the hearing.

"Complainant shows that by reason of the failure of the defendant to pay as per the terms of its policy that he has incurred additional expenses, had to hire attorneys and pay fees and have the expense of a law suit."

The defendant filed an answer to the bill on July 10, 1933, in which it denied that complainant fell and permanently injured himself on February 3, 1933, as alleged in the bill, and denied that complainant became totally disabled, as provided in the contract sued upon after the said contract had been in force one full year.

Defendant stated in his answer that, on August 9, 1933, it paid to the complainant $1,000 as the specified benefit for the loss of his right foot, caused as a result of said railroad accident which occurred one June 20, 1932.

Defendant also stated in its answer that complainant requested defendant to defer the monthly rates due for the months February and March, 1933, and in accordance with said request the rates due on said certificate for said months, amounting to $30.50, were paid by defendant out of its general relief fund, which sum, under the terms of the contract sued upon, is due by complainant to defendant.

Defendant further alleged in its answer (as a claimed basis for an estoppel upon complainant) that, on June 20, 1932, before the expiration of a year's membership in defendant association, complainant was injured in a railway accident; that at the time of said accident complainant carried total disability benefit insurance in the Equitable Life Assurance Society, a corporation with its situs in the city of New York, state of New York; that following said accident complainant presented to said Equitable Life Assurance Society his claim for total disability benefits, including an affidavit by himself in which he set forth that on June 20 (1932), he became wholly disabled as a result of a "railroad accident, train crushing my feet and legs, back and side wrenched;" that this affidavit was substantiated by three of complainant's physicians, which proofs when submitted to said society were satisfactory, and his claim for total disability benefits was allowed, beginning June 20, 1932, and complainant has been paid said benefits monthly since said date. Defendant says (in its answer) that "by reason of said proofs of total disability the complainant is now estopped from claiming that his alleged disability resulted from

an accident which is alleged to have occurred February 3, 1933, after a full year of continuous membership in defendant Association."

Defendant concluded its answer with a general denial of all allegations in the bill "not admitted, qualified or explained, and not specifically denied."

Upon the issues made by the bill and answer, the case was heard by the chancellor, and a decree (including the chancellor's findings of fact and conclusions of law) was made and entered as follows:

"This cause came on to be heard on this 16th day of February, 1934, before the Hon. Ernest H. Boyd, Chancellor, at his Chambers in Cookville, Tennessee, by consent of the parties, upon the pleadings and exhibits thereto, and the depositions and exhibits thereto on file in this cause, from all of which the court finds, adjudges and decrees as follows:

"1. That on the 31st day of October, 1931 the defendant The Maccabees issued and delivered to the complainant J. E. Bell its certificate or policy of Insurance No. 1,117,074 by the terms of which it insured him against total and permanent disability, occurring more than one year after the date of the issuance of the policy, and arising from other cause than his own illegal, reckless and foolhardy act, from performing or directing his usual labor and from performing or directing any and all kinds of labor or business, whether such directing is his usual occupation or not.

"2. That after the issuance of the said policy or certificate, on to-wit the 20th day of June, 1932, the complainant suffered an accident by having the wheels of the caboose of a railway train run over his feet and mashing and mangling them, and otherwise bruising his body, as a result of which his right foot was amputated about midway between his knee and ankle, and his left foot was caused to be stiff and require a brace, and that as a result of this he was totally disabled for a period of time.

"3. That he had treatment in a hospital in Memphis in December, 1932 and January, 1933 after which he was so improved that he was able to and did go into his office in Jamestown, Tennessee where he was engaged in the publication of a weekly newspaper, and give general direction to the operation of his business, and use his typewriter, and write articles for his said paper and other items, and generally superintend his business of printing and publishing his paper for a period of about two weeks before and up to February 3rd, 1933.

"4. That on said date of February 3rd, 1933 the complainant while in his printing office, suffered a fall, falling on a chair, his head striking the arm of said chair and thence on to the floor, by reason of which he was rendered unconscious for a period, and as a result of which fall his previous disability was so increased as that he has since that date been totally disabled and unable to do any work of any kind

or to direct his business or work and that said disability is apparently permanent.

"As a result of said first accident occurring on June 20th, 1932, Complainant was totally disabled from the performance of physical and manual labor until about two weeks prior to the second accident, occurring on February 3rd, 1933, when after his return from a hospital at Memphis and after he had procured an artificial limb his condition improved to the extent that he was able to be in his printing office, to supervise and direct the conduct of his newspaper office, write for his paper, and operate his typewriter, but since his said second accidental injury of February 3, 1933, he has been totally and apparently permanently disabled, such increased and apparently total permanent disability is the result of the said fall of February 3, 1933, and which occurred more than one year after the issuance of said policy or certificate and while the same was in full force and effect.

"5. That therefore the Complainant is entitled to recover of the defendant under the terms of said certificate or policy the sum of Fifty Dollars ($50) per month as compensation for said disability, commencing with May 1st, 1933 and continuing during the term of the natural life of the complainant, each said payment becoming due and payable on the first day of said month, there being now due and accumulated to this date the sum of Five Hundred Dollars ($500).

"It is therefore ordered, adjudged and decreed that the complainant have and recover of the defendant The Maccabees the sum of ($500) Five Hundred Dollars now due, and the further sum of Fifty Dollars on the first day of each month thereafter during the life of the said complainant, or the continuation of said disability, and all the cost of this cause for which execution will issue.

"To which action of the Chancellor in sustaining complainant's said bill and rendering judgment against it the defendant excepted at the time and now excepts, and prays an appeal to the next term of the Court of Appeals of Tennessee sitting at Nashville, Tennessee, which appeal to it is granted, upon .its giving an appeal bond, conditioned as required by law, and upon application it is allowed 30 days from this date in which to file said appeal bond and perfect its said appeal.

"In case of appeal being perfected, the Clerk & Master will copy into the transcript all the evidence which may have been excepted to and the exceptions sustained, together with said exceptions and the action of the Chancellor. The defendant having filed written exceptions to certain of the questions and answers in some of the depositions the same are marked filed as of this date by the Chancellor and will be filed by the Clerk & Master as of this date and will be made a part of the record and included in the transcript on appeal together with the action of the Chancellor thereon.

"In case of Appeal being perfected, the Clerk & Master will send up the exhibits to the said depositions in their original form without copying the same into the transcript.

"The defendant at the request of the complainant, having paid from its relief fund the premiums on said policy for the months of February and March, 1933, amounting to the sum of Thirty and 50/100 Dollars ($30.50), it is entitled to recover the same from the complainant under the terms of said policy and· the said amount so paid by the defendant will be credited on the judgment in favor of the complainant above rendered, thereby reducing the said amount of $500 to $469.50.

"At the hearing of this cause the following attorneys were present. J. W. Stone and W. M. Hannah, Solicitors for complainant and A. J. Calhoun, Solicitor for defendant.

"It appearing to the court that W. M. Hannah and J. W. Stone, solicitors for the complainant, have rendered valuable services for the complainant in the prosecution of his said suit, upon their motion a lien is hereby declared in their favor on the recovery herein for their reasonable attorney's fees.

"The Clerk & Master at Jamestown, Tennessee will file and preserve this decree as required by law and will immediately enter same on the Chambers Minutes of her court.

"Done at Chambers, in Cookville, Tennessee on this the 16th day of February, 1934.

"Ernest H. Boyd, Chancellor."

Defendant perfected its appeal and, in this court, has filed assignments of error numbered 1 to 12, inclusive; but the assignments numbered 6 to 11, inclusive, cannot be considered, and are overruled, for reasons which will now be stated.

Assignments numbered 6, 7, and 8 are as follows:

"6. The Chancellor erred in overruling defendant's exceptions to questions and answers Nos. 2, 3, 4, 5, 6, 7 and 9 of the depositions of John Edward Bell taken December 18, 1933.

"7. The Chancellor erred in overruling defendant's exceptions to questions and answers Nos. 4, 5, 6, 7, 8, 9, 10, 11 and 12 of the depositions of Fannie Bell taken December 18, 1933.

"8. The Chancellor erred in sustaining complainant's objection to the admission of exhibit F to the deposition of C. L. Biggs."

These assignments, 6, 7, and 8, do not conform to the rules of this court, governing assignments of error which require that: "When the error alleged is to the admission or rejection of evidence, the specification shall quote the full substance of the evidence admitted or rejected, with citation of record where the evidence and ruling may be found." See Appendix to 155 Tenn. Rep., page XII. The Supreme Court has the same rule, 155 Tenn. Rep., page V, and Wood

v. Green, 131 Tenn., 583, 175 S. W., 1139; Nance v. Smyth, 118 Tenn., 349, 99 S. W., 698; Stacker v. Railroad, 106 Tenn., 450, 61 S. W., 766.

The assignments numbered 9, 10, and 11 are as follows:

"9. The findings of the Chancellor are against the law.

"10. The findings of the Chancellor are against the evidence.

"11. The findings of the Chancellor are against the law and the evidence."

■ These assignments (9, 10, and 11) are not sufficiently specific, but are too vague and indefinite to merit consideration.

The rules of this court require that assignments of error shall show "specifically wherein the action complained of is erroneous, and how it prejudiced the rights of the appellant, or plaintiff in error." See Appendix to 155 Tenn. Rep., page XII, and Felton v. Clarkson, 103 Tenn., 457, 53 S. W., 733; Electric Railway v. Lawson, 101 Tenn., 406, 47 S. W., 489; Record v. Cooperage Co., 108 Tenn., 657, 69 S. W., 334; 2 Ency. Pl. & Pr., p. 955.

Appellant's assignments of error do not question the correctness of the facts stated in the paragraph of the chancellor's findings numbered 1 and 2 (see decree, supra), and we need not restate these facts.

Appellant's twelfth assignment is that the findings of the chancellor are against the great preponderance of the evidence; and his second, third, and fourth assignments challenge certain specified findings of the chancellor and his conclusions therefrom.

We are of the opinion that the chancellor's findings are supported by the proof, and that the material, determininative facts of the case are embraced in his findings hereinbefore copied. We therefore concur in the chancellor's findings, and we see no occasion to extend this opinion by restating the facts.

■■ Appellant's main contention is that the disability of appellee upon which the bill and the decree are predicated resulted from his injuries received in the railroad accident on June 20, 1932, and, therefore, in less than one year after the issuance of the benefit certificate and "supplementary agreement," but we find otherwise. Appellee was engaged in "directing his usual labor or business" in his printing office, and in "performing" a part of his "usual labor" viz., writing editorials and other "copy" for his newspaper on February 3, 1933 (more than one year after the issuance of the benefit certificate), when, as the result of his crutch accidentally slipping on the floor, he fell across or against a chair, injuring his head and back to such an extent that he has been reduced practically to a state of physical and mental helplessness and total and permanent inability to perform or direct his usual labor or business, or any other kind of labor or business.

It is, in substance, argued for appellant that the necessary implication from the statement in the chancellor's findings, that "as a result of which fall (on February 3, 1933) his previous disability was so increased as that he has since that date been totally disabled," etc., is that the chancellor found that the present total and permanent disability of appellee resulted from the injury of June 20, 1932, and was merely "increased" by the injury of February 3, 1933. Such, in our opinion, is not the correct interpretation of the chancellor's findings as last above quoted.

In the "railroad accident" of June 20, 1932, complainant's legs were crushed below the knee, causing the amputation of one leg midway between the ankle and the knee. He also had a bruise "low down in his back" which practically disappeared before the "second accident."

Complainant's fall on February 3, 1933, injured his head and spine and produced "traumatic neurosis" and "traumatic hysteria" which, as before stated, reduced him to a state of inability to perform any kind of remunerative labor or direct any kind of business.

Complainant was very greatly and permanently disabled physically by his first injury, but the fact that before and at the time of the second injury he was performing a part of his usual labor and directing his usual business is cogent and convincing evidence that he was not then "totally and permanently disabled . . . from performing or directing his usual labor or business."

In other words, complainant was, at the time of his second injury, partially disabled as the result of his first injury from performing his usual labor, etc., but he was not totally disabled, within the terms of the benefit certificate here in question. The second injury did not increase complainant's inability to use his legs, but it added another disability of a different character which converted his former partial disability into a total and permanent disability, and it was in that sense, we think, that the chancellor intended to be understood when he stated that, "as a result of which fall (on February 3, 1933) his previous disability was so increased as that he has since that date been totally disabled," etc.

Complainant was less than sixty years of age, being about forty-three, at the time of his second injury.

There is no claim that complainant's injury of February 3, 1933, was the result of "his own illegal, reckless, or foolhardy act."

We find that, as a result of his injury occurring on February 3, 1933 (which was more than one year after the issuance of the "supplementary agreement"), complainant is "totally and permanently disabled . . . from performing or directing his usual labor or business, and from performing or directing any and all kinds of labor or business," and is entitled to recover as adjudged by the chancellor.

650

The appellant's second, third, fourth, and twelfth assignments of error are overruled.

■ This disposes of all the assignments of error except the fifth, which is, that "the court erred in not holding that the complainant was estopped from a recovery herein because of his previous claim of total disability against the Equitable Life Assurance Society and the collection of such benefits."

It appears that at the time of complainant's "railroad accident," on June 20, 1932, he was insured by the Equitable Life Assurance Society of the United States under a policy which contained a contract for indemnity against "total disability" resulting from bodily injury or disease. The definition of "total disability" contained in that policy was as follows: "Disability is total when it prevents the insured from engaging in any occupation for remuneration or profit. The entire and irrecoverable loss of sight of both eyes, or the severance of both hands at or above the wrists, or of both feet at or above the ankles, or such severance of one entire hand and one entire foot shall be deemed total disability hereunder."

The Equitable policy also contained provisions under which the insurer could require proof "once a year" of the continuance of such "total disability," and could discontinue payments upon its termination.

Some months before February 3, 1933, complainant submitted to the Equitable proofs of total disability resulting from the injury of June 20, 1932, and the Equitable accepted the proofs and paid to him monthly benefits thereafter according to the contract.

It is seen that the terms of the Equitable contract and those of the defendant association were quite different, and that at the time he submitted proofs to the Equitable complainant was entitled to disability benefits under its policy, but not then entitled to such benefits under the contract of the defendant.

■ Moreover, any conduct of the complainant in a transaction with the Equitable, to which the defendant was not a party, could not raise an estoppel for the benefit of the defendant.

"An estoppel must be mutual and reciprocal, that is, it must bind both parties, and generally, therefore, it can operate neither in favor of nor against strangers. . . . An admission or statement will not work an estoppel if it was addressed to and designed solely for the information of another and was not intended to influence the conduct of the person who claims the estoppel." 10 R. C. L., pp. 839, 840, par. 145.

We find no basis in the record for an estoppel on complainant such as that claimed by defendant, and the fifth assignment of error is overruled.

It results that the decree of the chancery court is in all things affirmed, and a decree will be entered accordingly against the defendant, The Maccabees, and the surety on its appeal bond for the sum of $469.50, with interest thereon from the date of the decree below (February 16, 1934), and for the costs of the cause, including the costs of the appeal.

Crownover and DeWitt, JJ., concur.