COPELAND v. CHERRY et al.—95 S. W. (2d) 1275.

Middle Section. April 18, 1936.

Petition for Certiorari denied by Supreme Court, July 3, 1936.

C. L. Boyd, of Waynesboro, and R. D. DeFord, of Savannah, for plaintiff in error Bud Copeland.

Ross & Ross, of Savannah, for plaintiff in error Pierce Cherry.

Metcalf, Metcalf & Apperson, of Memphis, for defendant in error Manassa Timber Co.

CROWNOVER, J. This is a common-law action for damages for personal injuries sustained by the plaintiff, Bud Copeland, while employed at a sawmill in Wayne county, it being averred that the defendants had not complied with the Workmen's Compensation Law (Code 1932, section 6851 et seq.). The action was brought by him against Pierce Cherry, who was operating the sawmill; and against the Manassa Timber Company, the owner of the timber being sawed, on the theory that Pierce Cherry was operating the mill as the agent or servant of the timber company; and against J. R. Porter on the theory that he was the owner of the mill and Pierce Cherry was his servant.

The declaration avers in substance that the Manassa Timber Company operated a sawmill in Wayne county; that the sawmill was managed by the timber company's agent or servant, Pierce Cherry; that J. R. Porter was the owner of the sawmill and Cherry was his servant; that the plaintiff, Bud Copeland, was employed at said mill, and on December 12, 1932, while engaged in turning a log to be sawed, was injured as the result of the negligence of another employee.

The declaration further avers that defendants had failed to comply with the Workmen's Compensation Act of Tennessee.

The defendants each pleaded the general issue of not guilty.

The case was tried by the judge without a jury. At the close of the plaintiff's evidence the defendants moved the court for a judgment in their favor, which motion was overruled. The trial judge found that the plaintiff was not entitled to recover of the defendants Manassa Timber Company and J. R. Porter, and dismissed the action as to them, but rendered judgment for $4,000 against the defendant Pierce Cherry, and in favor of the plaintiff, Bud Copeland.

The plaintiff excepted to the finding and judgment of the court in dismissing the action as to the Manassa Timber Company and J. R. Porter, and appealed in error to this court and has assigned errors.

And the defendant Pierce Cherry excepted to the judgment of the court in finding him liable and assessing damages against him in the sum of $4,000 and appealed in error to this court and has assigned errors.

The errors assigned by the plaintiff in error Copeland are, in substance as follows:

(1) The court erred in failing to hold that Cherry was the agent

of the Manassa Timber Company and not an independent contractor.

(2) The court erred in failing and refusing to render judgment against J. R. Porter.

(3) The court erred in sustaining the exceptions of the defendants to the testimony of Dr. R. J. DeFord in regard to an injury which A. Z. Franklin sustained at this same mill on January 3, 1933.

(4) The court erred in admitting the testimony of Pierce Cherry as to the contract, over the objection of the plaintiff that the contract was the best evidence.

(5) The court erred in permitting the attorney, Mr. Apperson, to appear in the case.

(6) The court erred in permitting the defendants to introduce testimony as to the fact that the Manassa Timber Company carried compensation insurance, over the objection of the plaintiff that the policy was the best evidence.

(7) The court erred in failing to render judgment against the timber company because it knowingly entered into a contract with an insolvent contractor.

The errors assigned by the plaintiff in error Pierce Cherry are as follows:

(1) There is no evidence to support the judgment.

(2) The plaintiff was not an employee of the defendant Cherry at the time he sustained the injury for which recovery was allowed.

(3) The judgment is excessive.

The facts proper to be stated are:

The Manassa Timber Company, in 1932, owned a tract of timber land in Wayne county. On December 6, 1932, the timber company entered into a verbal contract with Cherry, which was confirmed by a letter which was as follows:

"December 6, 1932.

"Mr. J. P. Cherry, Walnut Grove, Tennessee.

"Dear Sir: We have not had an opportunity to confirm our agreement with regard to sawing lumber until now.

"This agreement was made and entered into, verbally, some three weeks ago at Savannah.

"That we were to permit you to set up your mill on the lands known as the Haggard and Hassell tract from which we purchased all of the timber. That you were to construct the mill as promptly as possible and to keep in running order during the life of the agreement at your own expense.

"It is understood that you are to saw lumber, or timber, in accordance with the specification furnished you by this office, or our authorized representative. That in sawing the material you are to prevent any unnecessary waste therefrom.

"It is further agreed that you are to consult our local representative in connection with the manufacture of lumber and handle to conclusion in line with the result such consultation and final instructions that might be given you.

"It is further agreed that you are to remove the mill and other of your personal properties from the premises within a reasonable time, if, and when, you receive notice from this office or our representative to do so.

"It is understood between us that your mill is to be set on the premises above mentioned for the purpose of sawing mattress lumber covering specifications as required by the U. S. Government, copy of which is herewith attached, and that this lumber is to be manufactured at a price of $5.00 per thousand board measure on the following basis:

"We to cut the logs; you to deliver all of them to your mill site, saw the lumber according to the specifications, separating the lengths as they come from the saw, piling all lumber in an orderly manner subject to the instructions of our representative. We agree to move the lumber from the mill site as fast as practical for us to do so.

"We reserve the right to make changes in the specifications as regard to lengths and widths, requiring all 1 x 4 sizes to be cut if we find it necessary.

"The properly manufactured lumber will be scaled at regular intervals, or at such time when you have a sufficient cut to justify such scales and these scale tickets will be promptly mailed to this office by our representative, on receipt of which checks will be issued in your favor on a basis of the contract price.

"Manassa Timber Company
"By A. N. Robertson.

"Accepted: J. P. Cherry."

A sawmill was placed on the timber company's property. It is not clear who was the owner of the mill. Pierce Cherry testified that the Tennessee State Lumber Company owned it and that its representative gave him permission to use it, but stated he did not know who was the present owner, and that he paid no rent for its use.

Bud Copeland, the plaintiff, was hired by Pierce Cherry some time in November, 1932, to work at the mill. After he had worked about two weeks, he asked for a leave of absence of several days to go to Memphis to bring his sick child home from a hospital, and he employed another man to work in his place until he returned. The next Monday morning he returned to the mill, but Cherry was not there. At about 7 o'clock the sawyer, Franklin, started the mill and the employees, including Copeland, went to work. Cope-

land's job was turning the logs on the carriage to be sawed. After they had been sawing for about an hour, a piece of timber was caught on the saw and a long pointed piece was·cut from the side of it and was thrown from the saw with much force, the sharp end striking Copeland in the side and passing through his abdominal cavity.

The plaintiff's contention is that the Manassa Timber Company was operating the sawmill through its servant or agent, Pierce Cherry; that said company and Cherry had not complied with the Workmen's Compensation Law; that he (the plaintiff) was injured through the negligence of a fellow servant, and is entitled to maintain a common-law action for damages against Manassa Timber Company, Cherry, and Porter.

The defendant Manassa Timber Company set up three defenses:

(1) That the plaintiff, Bud Copeland, was not its employee, but an employee of Pierce Cherry, who was an independent contractor engaged in sawing timber for it.

(2) That it had complied with the terms and provisions of the Tennessee Workmen's Compensation Laws, and that its liability, if any, was for the compensation as provided in said laws.

(3) That no negligence is shown on the part of the Manassa Timber Company.

The defendant Pierce Cherry set up the following defenses: (1) That there is no evidence to support the judgment; (2) that the plaintiff was not in his employment when the accident happened; and (3) that the judgment is excessive.

It appears to be the contention of the plaintiff that J. R. Porter was the owner of the mill and Pierce Cherry his servant and that Porter operated the mill as the agent of the timber company.

1. The principal question in this suit is whether Pierce Cherry operated the sawmill as the agent or servant of the Manassa Timber Company, as contended by the plaintiff; or whether he was an independent contractor, as insisted by the defendants.

The leading definition of an independent contractor is that he is "one who, exercising an independent employment, contracts to do a piece of work according to his own methods, and without being subject to control of his employer, except as to the result of his work." Powell v. Construction Co., 88 Tenn., 692, 697, 13 S. W., 691, 692, 17 Am. St. Rep., 925; Gulf Refining Company v. Huffman & Weakley, 155 Tenn., 580, 587, 297 S. W., 199.

"In every case the decisive question is, Had the defendant the right to control in the given particular the conduct of the person doing the wrong?" Thompson on Negligence, section 622; Powell v. Construction Co., supra; Gulf Refining Company v. Huffman & Weakley, supra; Phillips v. Tenn. Eastman Corp., 160 Tenn., 538,

542, 26 S. W. (2d), 1051; Grace v. Louisville & N. R. Co. (Tenn. App.), 89 S. W. (2d), 354, 357.

"Whether one is or is not an independent contractor is often . . . a mixed question of law and fact." Gulf Refining Co. v. Huffman & Weakley, supra.

In 31 C. J., 473, it is said:

"It is impossible to lay down a rule by which the status of men working and contracting together can be definitely defined in all cases as employees or independent contractors. Each case must depend on its own facts, and ordinarily no one feature of the relation is determinative, but all must be considered together. Ordinarily the question is one of fact."

Taking the evidence as a whole, especially in view of the written evidence of the contract, we are of the opinion that Cherry was an independent contractor. There is no relevant evidence that the company retained the right to control the operation of the mill or to control Cherry while he was operating the mill. The timber company was merely interested in obtaining the lumber after it was sawed in accordance with the specifications. Cherry received $5 per thousand feet to saw the timber into lumber, and he employed his own hands and paid them. The timber company had no right to control the operation of the mill. Hence, Copeland's first assignment of error must be overruled.

2. Porter testified that he did not own the sawmill; that it belonged to the Tennessee State Lumber Company; that he had nothing to do with the operation of the mill; that he was employed by Cherry to haul logs. Cherry testified to the same facts. One witness testified that he was present when Porter discharged one of the sawmill employees, but Porter explained this by saying that Cherry had asked him to look after the mill in his absence.

We have found no evidence that Porter was running the mill as the agent of the timber company and Cherry employed by him, therefore we hold that the trial judge was correct in rendering judgment as to him.

It appears from the evidence that several persons used the mill at will, but the question of who owned the mill and the fact that J. R. Porter once operated it do not affect this lawsuit.

3, 4. Plaintiff in error Copeland's third and fourth assignments of errors do not conform to the rules of this court governing assignments of errors, which rules require that: "When the error alleged is to the admission or rejection of evidence, the specification shall quote the full substance of the evidence admitted or rejected, with citation of record where the evidence and ruling may be found." Rules of the Court of Appeals, 14 Tenn. App., iii; Wood v. Green, 131 Tenn., 583, 175 S. W., 1139; Pigg v. Houston & Lig-

gett, 8 Tenn. App., 613, 619; Bell v. The Maccabees, 18 Tenn. App., 641, 647, 82 S. W. (2d), 229.

The original contract was verbal, but was confirmed by letter which was introduced in evidence. The contract being oral, parol evidence was admissible to show its terms.

These assignments must therefore be overruled for the reasons stated.

5. Plaintiff in error Copeland's fifth assignment of error cannot be considered by us because the question was not called to the attention of the trial court on the motion for a new trial. This was necessary. Mayor, etc., of Morristown v. Love, 160 Tenn., 177, 184, 22 S. W. (2d), 769; Nashville, C. & St. L. Ry. Co. v. Smith, 147 Tenn., 453, 455, 249 S. W., 377; Wise & Co. v. Morgan, 101 Tenn., 273, 276, 48 S. W., 971, 44 L. R. A., 548.

However, if the Manassa Timber Company had compensation insurance, the insurance company would have had a right to be represented by an attorney. The fact that an attorney appears in a case for a client who is not a party to the suit should not affect a correct judgment, and is not reversible error.

6. The introduction of testimony as to the fact that the Manassa Timber Company carried compensation insurance, over the objection of the plaintiff, is not reversible error, for the reason that the plaintiff introduced and read into the record a certificate of the department of labor of the state of Tennessee that the Manassa Timber Company was "engaged in the business of logging and lumbering at Searles, Tennessee, and elsewhere in the State of Tennessee," "that the payment of compensation to 4 employees had been secured by insuring their liability for such payment with the Lumbermen's Mutual Casualty Company . . .," which certificate was dated October 1, 1931, expiring on October 1, 1932. He also read in evidence a renewal certificate of the above, dated October 1, 1932, expiring on October 1, 1933. A certificate of the commissioner of labor is admissible in evidence if duly authenticated. Code, section 6169.

After the plaintiff had introduced these certificates, we think that the introduction of parol evidence to the same effect was harmless error, and this assignment must be overruled.

7. There is absolutely nothing in the plaintiff's assignment of error that the court erred in failing to render judgment against the timber company because it knowingly entered into the contract with an insolvent contractor, for the reason that there was no evidence of fraud or that the company knew that Cherry was insolvent at the time it entered into the contract with him.

8. We think that the Manassa Timber Company is not liable to a common-law action for negligence, because it had com-

plied with the Workmen's Compensation Statute. In the first place there is a presumption, in the absence of evidence to the contrary, that an employer has complied with the act. Code, sections 6853 and 6897; 71 C. J., 1503, sections 1524, 1525. But, of course, this presumption is indulged only in the absence of proof. Wright v. Bridges, 16 Tenn. App., 576, 65 S. W. (2d), 265.

Where the employer has complied with the Workmen's Compensation Act, he is not subject to suit at common law. The remedy provided for in the act is exclusive. Code, section 6859; Oman v. Delius, 10 Tenn. App., 467.

In Tennessee a defendant may plead as many pleas as he has defenses, and may plead inconsistent pleas. Smithson's Civil Procedure, 503; U. S. Bedding Co. v. Cohen, 12 Tenn. App., 472. The defendant may under the general issue show that the plaintiff was not its employee, or it may show under its plea of not guilty that it had compensation insurance. 71 C. J., 1500, 1501, section 1519.

"Speaking, generally, under the plea, not guilty, the defendant may introduce any evidence which tends to prove that the plaintiff never had any right of action against him. But evidence which implies or assumes that the plaintiff once had a cause of action, but tends to prove that the right of action has been extinguished, by subsequent facts, is not, generally, admissible under that plea. Thus: if the action be barred by the statute of limitations; or if the plaintiff have released the defendant; or if he have paid the damages sued for; or if there have been an accord and satisfaction; or if the cause of action have been extinguished by reason of any other fact, which has happened since the tort was committed; such subsequent fact should be pleaded, as it may be held not to be admissible under the general issue, not guilty." Smithson's Civil Procedure, 507, 508.

Hence all of plaintiff in error Copeland's assignments of errors, both as to the Manassa Timber Company and Porter. must be overruled.

The record shows that Cherry did not comply with the Workmen's Compensation Act, and he may therefore be sued at common law for his negligence, even though another employer has complied with the Workmen's Compensation Law. Code, sections 6865, 6866; Bristol Telephone Co. v. Weaver, 146 Tenn., 511, 243 S. W., 299; Mitchell v. Usilton, 146 Tenn., 419, 242 S. W., 648; Old Dominion Stages v. Cates (C. C. A.), 65 F. (2d), 258.

The defendant timber company contends that the first four assignments of errors are too general. These four assignments standing alone are not in compliance with the rules of this court, but they are accompanied by a brief in which he cites the record.

The two papers will be taken and considered as one, and are a sufficient compliance with the rules of this court as to assignments of errors. Wallace v. Goodlett, 104 Tenn., 670, 672, 58 S. W., 343; Pigg v. Houston & Liggett, 8 Tenn. App., 613, 620; Walkup v. Covington, 18 Tenn. App., 117, 123, 73 S. W. (2d), 718.

 9. We are of the opinion that there is evidence to support the judgment against Cherry and that it is not excessive. Copeland, the plaintiff, testified that Cherry hired him to work at the sawmill; that after he had worked there about a week he obtained a leave of absence to go to Memphis to bring his sick child back from the hospital; that he secured Taft Perry to work in his place while he was away; that he returned to work the next Monday morning at 7 o'clock; that Cherry had not yet come to the mill, but the sawyer, Franklin, who operated the mill in his absence, put the men to work, and this accident happened a little while later. Taft Perry testified that Copeland asked him to work in his place while he was away in Memphis and he worked at the mill until Copeland returned. Pierce Cherry testified that Copeland had worked for him only fourteen hours, for which he had paid him; that Copeland had left his employ without any agreement about returning; that he was not expecting him back and had hired another man in his place. But we think the weight of the evidence is that Copeland was employed by Cherry when the accident happened.

Franklin says the accident was unavoidable, but Tom Kelly testified that the sawyer could have run the carriage back and they could have stopped it. If they had stopped the carriage, the accident would not have happened.

It is not disputed that Copeland was seriously and permanently injured and that he is practically unable to earn a living.

It results that all of Cherry's assignments of errors must be overruled and the judgment of the lower court is affirmed. A judgment will be entered in this court for $4,000 with interest from January 17, 1934, to the present. The costs of the cause including the costs of the appeal are adjudged against the defendant Cherry.

Faw, P. J., and DeWitt, J., concur.