# FARMERS STATE BANK v. JONES et al.—232 S. W. (2d) 658.

Eastern Section. November 28, 1949.

Rehearing denied March 14, 1950.

Petition for Certiorari denied by Supreme Court, July 15, 1950.

58

60

Price & Price, of Johnson City and E. E. Garland, of Mountain City, for appellant.

Simmonds & Bowman, of Johnson City and Harry B. Goodman, of Mountain City, for appellees.

HALE, J. ▮ This appeal involves the liability of R. W. Sutherland, a non-resident, upon a note for $1,846.-22, dated May 5, 1936, due in six months, executed to the complainant by the Johnson County Motor Co., a partnership composed of said Sutherland and Justin C. Rambo and Park M. Jones. The Chancellor denied a recovery, holding the note barred by the statute of limitations, and further, jurisdiction was obtained by the

wrongful act of complainant in attaching funds deposited with it. These matters will be covered in detail in our discussion of the merits of the case. The complainant has appealed and assigns errors. A motion to strike these assignments because of insufficiency has been made. We find they and the supporting brief fully, definitely and explicitly point out the errors complained of and satisfy the rules of this Court. Copeland v. Cherry, 20 Tenn. App. 122, 95 S. W. (2d) 1275; Adcox v. Southern Ry. Co., 182 Tenn. 6, 184 S. W. (2d) 37, 156 A. L. R. 1091.

Now to the merits. This partnership sold Ford cars and engaged in a general garage business. It was hard hit by the depression and ceased business in 1933 or 1934. Two of the partners—Rambo and Jones—were insolvent and Sutherland badly involved. The partnership was considerably indebted to the complainant by several notes. Payments were made and the amount due reduced to $1,846.22 as of May 5, 1936. On that date there was executed the note in question, signed by "Johnson County Motor Co., by R. W. Sutherland, member of Firm". At this time, as noted, the partnership had ceased business, although never formally dissolved. Mr. Sutherland was then a resident of Mountain City. He removed to Alabama in March, 1939, and has resided there ever since. He would come back to his old home in Mountain City for casual visits every year. After he left Mountain City for Alabama he continued to carry a personal checking account at the complainant bank. He speaks of it as a "small account", saying, "Sometimes it would get pretty low, sometimes it may get up pretty good, I believe one time it was up to six or seven thousand dollars" . . . We infer this was a general account used by him in the conduct of his personal affairs. The ledger sheets of this account are not offered in evidence.

On Oct. 21, 1942, the cashier of the Bank wrote Mr. Sutherland as follows:

"If you remember about 1 year ago I discussed with you, Justin and Park, the Johnson County Motor Co., note $1,846.22, which was given the bank to take up various other notes and at that time long past due. This note is dated May 5, 1936 and due six months after date which makes the note barred by statute as far as Justin and Park are concerned on Nov. 5, 1942, or 6 years after maturity. The limitations do not run in your favor so long as you are a nonresident, so I am informed.

"I have prepared a short renewal note and added six years interest which is $665.34 and want to ask that you just sign it as principal and I will try to get Justin and Park to sign it as principal also when you return it to me. I think they will not hesitate to sign up. The old note does not have either of their signatures, but just the Johnson County Motor Co. by R. W. Sutherland, member of the firm.

"Wiley, please do not delay getting this back to me as the board will have us place the note for collection before the six years after maturity is out and this would add considerable unnecessary costs to it."

In response Mr. Sutherland wrote on Oct. 23, 1942, as follows:

"Am inclosing signed note. Am counting on you to get Justin and Park to sign.

"Whether being a non-resident exempts me or not, I never want it said that I won't pay my debts.

"Charge my account with 30 days int. on $1899.80 note.

"Hope I can get my affairs in shape here and see you pretty soon."

The renewal note was to cover the principal and accrued interest and was signed by Sutherland alone— not in the partnership name. The co-partners refused to sign and Sutherland was so advised. He remained a resident of Alabama but upon one of his periodic visits home undertook to work out a settlement with the Bank by selling it some notes his sister, Mrs. Rambo, held against Park Jones and deducting therefrom the amount of the renewal note above mentioned. We concur in the Chancellor's finding on this, viz.: "In 1944 or early 1945, the exact time not clear or very material, Sutherland and Mrs. J. C. Rambo had a conference with cashier Howard, and the Bank president, I. W. Nave, at Mountain City. At this conference the complainant claims that Sutherland acknowledged and unconditionally promised to pay the debt, and offered some mortgage notes of Park M. Jones held by Mrs. Rambo (Sutherland's sister) as collateral security, but for some unknown reason failed to return and deliver it. While there is confusion in the testimony, and without discussing it in detail, the defendant's version is supported by a preponderance of the evidence. It is that he and Mrs. Rambo offered to sell the bank the Jones note, allowing credit on the sale for the indebtedness sued on, and collecting the balance. This Jones note was later paid but had been doubtful, and was recognized as 'slow'. Howard had written Sutherland on September 1, 1944, that a prior mortgage of $4,000.00 from Jones to the bank had just been paid, improving the standing of Mrs. Rambo's junior lien, (and had earlier written, on March 27, 1944, suggesting that Sutherland buy the Bank's note) making it altogether logical that her notes might have been regarded as 'bankable', at least in exchange for a charged off asset such as the note here sued on. No reason is

suggested why Sutherland would have merely tendered the notes as collateral. He was not then being threatened with suit, nor does it appear that he was ever threatened with legal action.''

Matters continued in this condition. On Sept. 1, 1944, and March 21, 1945, the Bank's Cashier, Mr. Howard, wrote Mr. Sutherland pressing for action. No reply was had. So, on August 18, 1945, the Bank's Board of Directors ordered Mr. Sutherland's personal account debited with the amount of the note dated May 5, 1936, principal $1,846.22, plus interest of $1,030.05, or a total of $2,876.27, and Mr. Sutherland was so advised by letter. He wrote the Bank on August 23rd, demanding this sum be placed back to his credit. This was refused. It appears that he at this time had a balance, after this debit, of $3,549.60.

Sutherland brought suit in the Circuit Court of Johnson City in January, 1946, to recover this sum. Thereupon the bill in the instant case was filed January 29, 1946, to enjoin the suit at law and to attach the sum it had so applied. Judgment was subsequently confessed in the case so enjoined.

The bill made Jones, Rambo and Sutherland parties. Sutherland was sued as a ''non-resident of the State of Tennessee and a citizen and resident of the State of Alabama''. It charges ''The defendant, R. W. Sutherland, has continued though a non-resident of the State of Tennessee, to do a banking business with the complainant. He some times carried a balance of as high as three or four thousand dollars in said bank. Finally, after not being able to get him to pay the aforesaid notes and indebtedness, the bank took charge of and set apart of his said account, the sum of Two Thousand Eight Hundred Seventy Six Dollars and twenty seven cents, on the 17th day of August, 1945, to be applied to the payment, satis-

faction, and discharge of the aforesaid notes and the obligation represented by them, The complainant still has said fund''.

It is further averred: ''The complainant realized that it cannot in law, apply the personal funds and property of defendant, R. W. Sutherland, to the payment and satisfaction of the *partnership indebtedness,* of Johnson County Motor Company to it.''

An amendment was made charging defendants Jones and Sutherland had renewed this note by promises to pay, etc. After a demurrer and plea in abatement—hereinafter noticed—had been passed upon, the defendant answered, setting up that various assets of the partnership had been turned over to the Bank for liquidation and asking for a settlement thereof, and saying: ''This defendant shows to the Court that Complainant Bank sat by more than six years holding the said note of May 5th, 1936, of the Johnson County Motor Company, and instituted no action thereon, although two of the partners all during said time were residents of Johnson County, Tennessee, and one or both of them owned property in said county, and this defendant, *although a non-resident of Tennessee,* was frequently in Johnson County, and in complainant bank, and owned property in Johnson County, Tennessee. Said bank allowed said note to become barred as to said partnership and the individual partners. Wherefore, this defendant pleads and relies upon the six year statute of limitations in such cases made and provided, in bar of Complainant's suit on said note. This defendant denies that he is estopped by promise, conduct or otherwise, to plead the statute of limitations against bringing of suit on said note.''

It was also contended the complainant had no right to convert his deposit and hold it until attached in this

cause, saying: "Complainant not only unlawfully withheld and appropriated to its own use the funds of this defendant until after he had entered suit therefor as alleged in the bill and then attempted to attach the same, but it caused an absolutely void attachment to be issued, and a void return to be made, and continued to hold said funds in its possession until after this defendant filed its plea in abatement, and it then procured a second attachment to issue and be served, at which time the fund was taken in hand by the Sheriff and paid into the hands of the Clerk and Master of this Court, in this cause."

Considerable proof was taken, much of it relating to the value of the assets allegedly placed with the Bank for liquidation. On this feature, the Chancellor found: "It is insisted by Sutherland that complainant is also estopped by its failure to render an account of its liquidation of partnership assets taken over when the business closed in 1933. This account was demanded in the answer, and on the conclusion of proof amendment tendered to plead estoppel. A number of cases are cited in support of the principle that when one person takes over property of another, with consent, there arises an express trust, and when without consent, a constructive trust. In either case there is the duty to realize fair value, and to account, and the relationship established, the burden of proof lies on the trustee. The principals are clearly sound, though as sought to be here applied more closely resemble the maxim that "He who seeks equity must do equity" than a technical estoppel. It must be conceded that the Bank took over and liquidated the tangible personal property of the partnership, the equipment items of the character covered by its chattel deed of trust, without foreclosure. While express consent was not proved there was certainly no objection by anyone. The business had

reached a very low ebb and all efforts to revive it had failed. This equipment was sold and credits made on partnership notes, of which there were then several, according to Howard's testimony. No records were preserved and there is no satisfactory accounting offered here, though cashier Howard seems to have done the best he could with the data available. Credits aggregating $625.74 were made on a $984.64 note, Howard says from equipment sales, and principal credits of from $100 to $200 appear on other notes, as well as interest, within the years immediately after the Bank took over. Whether these are from liquidation is not clear. Also the Bank seems to have collected certain partnership notes receivable held by it as collateral, but did nothing with other notes or open accounts, the preponderance of the evidence being that these were merely "stored" at the Bank with the partnership records. They were certainly very carelessly handled but I cannot see that the fault lies with the bank. There seems to have been a total lack of interest by the partners after the business closed, though they were frequently at the Bank. They deny any discussion of the partnership assets with the Bank, and cashier Howard testifies both ways on the point (see his deposition pp. 38-39 and p. 59) withal very vaguely. It is not strange that after 15 years, with no detailed records preserved, if ever made, memories are now dull as to what actually took place. The Bank's failure to make and render a business like account of its stewardship is plain and under other circumstances might result as defendants insist, but here it is notable that no partner ever asked an accounting or even mentioned the liquidation of the assets, according to their own testimony, until this suit was brought. Defendants Sutherland and Rambo signed a renewal note in 1935, and Sutherland in 1936,

two and three years after the assets were "taken over", without inquiry or objection as to the liquidation, Sutherland conditionally promised to pay the debt in 1942, and discussed its settlement in 1944 or 1945, without questioning the amount or even mentioning partnership assets. If complaint was ever made to the Bank, prior to this suit, the record does not reveal it."

We concur in that finding.

The Chancellor first held the statute of limitations was tolled by Code Sec. 8581, viz.: "If at any time any cause of action shall accrue against any person who shall be out of this state, the action may be commenced within the time limited therefor, after such person shall come into the state; and, after any cause of action shall have accrued, if the person against whom it has accrued shall be absent from or reside out of the state, the time of his absence or residence out of the state shall not be taken as any part of the time limited for the commencement of the action."

And a recovery was allowed against Sutherland for one-third the amount sued for on the ground that the Bank, by failure to sue the other partners, Jones and Rambo, within the time allowed by statute, had prejudiced his right to contribution.

However, upon further consideration, the Chancellor held: (1) The aforesaid statute was not applicable because not sufficiently pleaded: (2) That the wrongful conversion of Sutherland's deposit by its application to the partnership debt brought into play the rule that "no one can take advantage of his own wrong", citing Timmons v. Garrison, 23 Tenn. 148; Battelle v. Youngstown Company, 84 Tenn. 355.

We are forced to disagree with both holdings. As before pointed out, the bill averred the defendant

Sutherland was a non-resident of the State. It does not show that he was a resident of Tennessee from 1936 until 1939. The answer admits he was a non-resident, but does not undertake to show that he was a resident at the time of the accrual of the right of action in 1936 and until his removal in 1939. No objection was made to the evidence adduced on this phase of the case. It is evident the complainant was relying upon the non-residence of this defendant as barring the statute of limitations; and was so understood by him, altho the applicable statute was not specifically pleaded. The rule is, "If, however, the note should be barred by the statute of limitations, and it becomes necessary to disclose this fact in the bill, in such cases it is essential to go further, and set up the facts which avoid the bar of the statute, such as *non-residence* of the defendant, or a promise to pay the note made within six years". Gibson (3rd Ed.) Sec. 408, page 353. As before pointed out, the bill avers the non-residence of defendant. This could be construed in the enlarged sense of his having been a non-resident at the time of the accrual of the cause of action, which certainly would embrace any subsequent non-residence after the accrual of the right of action. Every reasonable presumption is to be made in favor of the bill, so as to support rather than defeat it. Even in law cases a pleading is sufficient (1) When it conveys a reasonable certainty of meaning; (2) When, by a fair and natural construction, it shows a substantial cause of action or defense. Code Sec. 8729. This rule should have greater application in equity causes on appeal.

The appellee relies upon Sully v. Childress, 106 Tenn. 109, 60 S. W. 499, 82 Am. St. Rep. 875, to the effect that if the plaintiff proposes to rely upon the defendant's absence from the State to defeat the statute of limitations

he must specifically plead that fact. In that case there was no averment to bring the suit within the saving clause of the statute. The case of Criner v. Cherry, 3 Tenn. Cas. 496, holding a suspension of the statute might be shown by the proof without specific pleadings, was overruled. However, the Sully case was remanded in order to allow proper amendment. The Sully case and similar holdings are not authority in the instant case, where the bill reiterates the non-residence of defendant. In Jenkins v. DeWar, 112 Tenn. 684, at 686, 82 S. W. 470, it held: "It is a well-settled rule of chancery practice in this state since replications to answer were abolished that, where a statute of limitations which would ordinarily bar the action has run, any intervening fact relied upon to take the case out of it—such as disability of complainant, fraudulent concealment of cause of action, *non-residence* of the defendant, or a promise to pay within the statute— must be alleged in the bill, and without such allegation evidence of it will not be heard. Gross v. Disney, 95 Tenn. [592], 598, 32 S. W. 632; Sully v. Childress, 106 Tenn. [109], 118, 60 S. W. 499 [82 Am. St. Rep. 875]."

 Altho not a model of pleading in this respect, we think the bill put the defendant Sutherland upon notice that his non-residence was being asserted to defeat his anticipated plea of the statute of limitations. We hold the continued non-residence of this defendant from 1939 tolled the statute of limitations and that he is liable unless discharged by the matters hereinafter mentioned. Further, that the fact he had money or property within the State subject to attachment did not suspend the statute of limitations. An analogous case is Edgington v. Edgington, 179 Tenn. 83, where at pages 88 and 89, 162 S. W. (2d) 1082, 1084, it is said:

"We wish to emphasize the fact that it is only in those cases where the action may be prosecuted without the necessity of personal service upon the defendants, and full relief granted, that the statute does not apply.

"In that particular case the bill sought to set aside a conveyance of a local tract of land for fraud, in which, necessarily, full relief could be granted. The opinion then refers to the leading case of Taylor v. McGill, 74 Tenn. (6 Lea 294) 294, another case involving the fraudulent disposition or acquisition of land, and also to the case of Turcott v. Yazoo & M. V. Railroad Co., 101 Tenn. 102, 45 S. W. 1067, 40 L. R. A. 768, 70 Am. St. Rep. 661, where to avoid the one-year statute in a personal injury case the involved statute was invoked, but the court met this contention by saying that during the entire year the company had a local office and an agent in Shelby County where complete relief could have been had. In the opinion in Boro v. Hidell [122 Tenn. 80, 120 S. W. 961, 135 Am. St. Rep. 857], it was further stated:

"A distinction is to be taken between a suit by attachment and one of the kind we have now before the court, or one such as was the subject of the opinion in Taylor v. McGill, because, in attachment cases, complete relief cannot be given, inasmuch as, if any balance be due upon the debt after the exhaustion of the property attached, there can be no personal judgment rendered therefor, while in the kind of case we now have before us there is no necessity for personal judgment. However, the case of Carlin v. Wallace (81 Tenn. (13 Lea 571), 571), was, in effect, overruled in an oral opinion delivered in a recent case at Knoxville. Templeton v. British Association.

" 'In the kind of case we now have before us, complete relief could be given without personal service of process.

It is a real action brought in the county where the land lies, and the parties interested may be made parties to the suit by publication. Ray v. Haag, 1 Tenn. Ch. App. 249.

" 'It has been the constant practice in this state to proceed in real actions in the manner stated, when no personal service could be had upon the persons against whom the relief was sought. To hold differently now would probably shake many titles. The doctrine of Taylor v. McGill has become a rule of property.'

"From the foregoing it appears, for a good reason, that the rule does not apply in an attachment case, such as that we are now considering, and we are not disposed to extend it further than was done in those cases."

Then the question: Did the Bank's failure to take action against Jones and Rambo operate to release Sutherland? We do not think so. In the correspondence with him the Bank indicated its willingness to proceed against his partners if he so authorized. This authority was not given. He certainly had rights he could have asserted against his co-partners independent of any action by the Bank, had he so desired. He knew the Bank, by reason of the financial condition of Jones and Rambo, was looking primarily to him for payment. In short, he could have forced the issue. He did not do so, but wrote his creditor "Whether being a non-resident exempts me or not I never want it said I won't pay my debts". This was in October 1942. No complaint was made as to the Bank's failure to take action against his co-partners. In subsequent correspondence it offered to litigate the matter with the other members "if you prefer". He accepted the benefits of the Bank's continued indulgence, and, if he was injured ultimately it was due to his acquiescence. This bars his claim of estoppel.

In Morristown Furniture Co. v. People's Nat. Fire Ins. Co., 149 Tenn. 214, at pages 217, 218, 259 S. W. 539, 540, there is quoted and approved the following statement from 10 R. C. L., page 679: ''The final element of an equitable estoppel is that the person claiming it must have been misled into such action that he will suffer injury if the estoppel is not declared. That is, the person setting up the estoppel must have been induced to alter his position in such a way that he will be injured if the other person is not held to the representation or attitude on which the estoppel is predicted. Furthermore, an equitable estoppel cannot arise except when justice to the rights of others demands. It was never intended to work a positive gain to a party. Its whole office is to protect him from a loss, which, but for the estoppel, he could not escape. Consequently the estoppel should be limited to what may be necessary to put the parties in the same relative position which they would have occupied if the predicate of the estoppel had never existed.''

This brings us to the last defense, namely, that the Bank improperly applied his personal funds to the payment of a partnership obligation; that the subsequent attachment of this fund would allow the application of the rule against attachments of property brought into the State by ruse or subterfuge.

It is admitted by both the appellant and appellee that the Bank did not have the legal right to so apply said deposit. Under the Uniform Partnership Law, by Code Sec. 7854, the obligation was joint. Altho, while there is authority to the contrary, the great weight of authority is that a bank cannot claim the deposit of one partner, made on his separate account, in order to apply it on a debt due by the partnership. 7 Am. Jur. ''Banks'' Sec. 630, page 458. Was the Bank acting in such bad

faith as to bring it within the rule noted? We do not think so. There was no dishonesty; merely a mistaken belief of legal rights. There was no ruse or enticement of property. Sutherland voluntarily deposited this money with the Bank. At other times previously he had authorized the bank to charge his personal account with interest on and payment of small partnership obligations. There was no concealment from him as he was immediately advised of the Bank's action. Would this honest but mistaken belief bar the Bank from subsequently proceeding in an orderly way from attaching this fund? To so hold would require of it a legal knowledge about which authorities are in dispute. (7 Am. Jur. supra) When confronted with Sutherland's action at law, it immediately proceeded to protect its rights. Having absolved the Bank of fraud, artifice or deception, it follows that the principle announced in Timmons v. Garrison, 23 Tenn. 148; Battelle v. Youngstown Mill Co., 84 Tenn. 355; Carlisle v. Cowan, 85 Tenn. 165, 2 S. W. 26, does not apply.

We find the assignments of error filed by Sutherland are without merit. The plea in abatement pointed out certain defects in the original attachment, which were subsequently cured. The Bank had the right to attach the fund it had in its possession. Boyd v. Bayless, 23 Tenn. 386. The bill as herein construed, showed a valid cause of action against Sutherland. Likewise, the assignment going to the action of the Chancellor in overruling the demurrer must be sustained for the same reason. We have heretofore quoted the finding of the Chancellor upon the alleged conversion and misappropriation or waste of partnership assets and have concurred in that holding.

The result is that complainant is entitled to recover the amount due on the note to the extent of the fund attached herein. There can be no personal judgment in that Sutherland entered his appearance specially to test the sufficiency of the attachment.

██ The question of interest has given us much concern. It seems equitable to allow only 3% interest. There are presented certain equities in that the Bank was due to account for the assets liquidated by it, and further, had the money, or parts thereof, on deposit, and thus had the use of it. Knox County v. Fourth and First Nat. Bank, 181 Tenn. 569, 182 S. W. (2d) 980.

Judgment for the principal of the note, with interest, less the items mentioned in the Chancellor's decree, pps. 239 and 240 of the record. To this will be added 10% attorney's fees provided in the note. Such recovery to be satisfied from the funds attached in this cause.

The appellee Sutherland will be perpetually enjoined from enforcing the judgment confessed in the Circuit Court of Johnson County, in the case of R. W. Sutherland v. Farmer's State Bank.

The cost of this cause, accruing up to May 1, 1946, will be paid by complainant and sureties, as adjudged by the Chancellor on that date. All the cost thereafter accruing and the cost of this appeal are adjudged against R. W. Sutherland personally, but will be paid out of the fund attached, with judgment over against said Sutherland therefor if the complainant so moves.

The right of the appellee Sutherland to have contribution from his co-partners is not presented on this appeal and is expressly pretermitted.

Reversed and judgment for complainant as herein declared.

HOWARD, J. (dissenting).

I am unable to agree with my associates. It is my opinion that the Bank's claim is barred by the statute of limitations.

Defendants Jones and Rambo continued to live in Johnson County after the motor company ceased to do business, as did the defendant Sutherland, until 1939, when he moved to Alabama. The proof shows that the bank could have obtained personal service of process on Sutherland on numerous occasions and that, besides owning property in Johnson County, he had funds on deposit with complainant sufficient to have covered the note. These facts were not controverted, the primary insistence being that Sutherland was a non-resident and that the note was kept alive by his promises to pay it. Under the circumstances, I think that the defendant's absence from the state was not such as to prevent the bank from suing him and having him personally served with process nor from legally attaching his property or funds.

In Spiegel Inc., v. Luster, 31 Tenn. App. 342, 215 S. W. (2d) 16, 17, the Middle Section of this Court declared: " 'Absence from the state and residence out of the state, in the sense of the statute (Sec. 8581), means such absence and such non-residence as renders it impracticable at all times to obtain service of process; . . . .' Turcott v. Yazoo & M. V. Railroad, supra, 101 Tenn. 105, 110, 45 S. W. [1067], 1069, [40 L. R. A. 768, 70 Am. St. Rep. 661]; Arrowood v. McMinn County, supra, 173 Tenn. [562], 567, 121 S. W. (2d) [566], 568, [119 A. L. R. 855]; see also numerous cases in Annotations, 94 A. L. R. 485; 119 A. L. R. 859." Also, Taylor v. McGill, 74 Tenn. 294.

In Rowsey v. Burkhead, 3 Tenn. Civ. App. 361, the Court said:

"The holding in the Taylor-McGill case, while not involving the same statute involved in this case, is, we think, in principle controlling as to the question now under consideration.

"There it appeared that the land which it was sought to subject to the payment of the claim sued on could have been proceeded against notwithstanding the non-residence of the administratrix, and it was held that therefore the running of the statute was not arrested; and, in like manner, in the case at bar where the object is to subject lands to the payment of debts, it is equally apparent that the lands could have been proceeded against notwithstanding the non-residence of the principal debtor, and for like reason the running of the statute was not arrested."

Furthermore, I think recovery should be denied because of the Bank's laches or inexcusable delay which has placed Sutherland at a disadvantage with his former partners.

## On Petition to Rehear.

HALE, J. We are presented with very able and courteous petition to rehear. It is said that our opinion of Nov. 28, 1949, "pretermits one controlling point urgently insisted by solicitors for this defendant; or at least does not deal with it, viz.: that Code Section 8581 did not operate to toll the running of the statute of limitations." Apparently this is answered by the opinion complained of, wherein, 232 S. W. (2d) 664, it is said: "We hold the continued non-residence of this defendant from 1939 tolled the statute of limitations . . . .. Further, that the fact he had money or property within the State subject to at-

tachment did not suspend the statute of limitations." We repeat that holding.

It is said we were wrong in giving an enlarged construction to the allegation in the bill that Mr. Sutherland was a non-resident; that this was an allegation *in presentae,* and did not warrant the broad construction we gave it. For the reasons given in the original opinion, we think we were correct in our holding. If not, then the answer says: "This defendant shows to the Court that Complainant Bank sat by more than six years holding the said note of May 5, 1936, of the Johnson County Motor Company, and instituted no action thereon, although two of the partners all during said time were residents of Johnson County, Tennessee, and one or both of them owned property in said county, and this defendant, *altho a non-resident of Tennessee,* was frequently in Johnson County," etc. (Emphasis supplied.)

Complainant was entitled to the benefits of the admissions contained in the answer, Hutsell v. Citizens Nat. Bank, 166 Tenn. 598 at 611, 64 S. W. (2d) 188, which rounded out the allegations of the bill, Bartee v. Tompkins, 36 Tenn. 623 at 638-639.

It is said that the allegation of non-residence was necessary to obtain an attachment and, consequently, should be so limited. To this we cannot agree. "The bill should contain a clear and orderly statement of the facts on which the suit is founded, without prolixity or repetition" . . . .. Code Sec. 10391. The allegation of non-residence need not be repeated. Every reasonable presumption in favor of the bill should be made. Anderson v. Mullenix, 73 Tenn. 287; Parks v. Margrave, 157 Tenn. 316, 7 S. W. (2d) 990.

We adhere to our holding in the original opinion that the allegation of non-residence "could be construed in

the enlarged sense of his having been a non-resident at the time of the accrual of the cause of action, which certainly would embrace any subsequent non-residence after the accrual of the right of action'', thus bringing the suit within the second part of section 8581 of the Code.

It is said that if the bill had pleaded Sec. 8581, it ''would not have been complete without an allegation that because of such non-residence the defendant could not be served with process''. We think a fair inference is that a non-resident cannot be served with process.

It is urged that the fact that the visits made by Mr. Sutherland to Mountain City every year made him subject to process and thus prevented the tolling of the statute. These were short visits, and known to the complainant, but the aggregate time was not sufficient to make the six years contemplated by the statute. Then the question, did these visits, with the resultant liability to service of process, constitute him a resident? This is answered in the negative by 34 Am. Jur. (Lim. of Actions) Sec. 218, page 175, wherein it is said . . . ''a mere transient visit of a person for a time at a place does not make him a resident while there . . .''. And in 54 C. J. S., Limitations of Actions, Section 212 at page 236, it is said, . . . ''mere visits to the state on business or pleasure will not be sufficient to bring the suspensory statute into operation.''

It is argued that the demurrer should have been sustained. We have heretofore pointed out that in our opinion the bill sufficiently charged such facts as would toll the statute of limitations. If not, then it was supplemented by the answer of the defendant. Even where the bill contains a prayer for general relief, chancery may grant relief upon matters not raised by the bill, as though

they were, when they are clearly disclosed in the answer and proof. See cases annotated under "Relief on Defendant's Answer of Proof", Vol. 6 Williams' Code of Tenn. Sec. 10391, page 921.

We think the determinative question is: Did the fact that Mr. Sutherland maintained a banking account with the complainant allow the operation of the statute of limitations? We showed in our original opinion that this was a fluctuating account, and quoted the testimony of Mr. Sutherland as saying it "was a small account" and "sometimes it would get pretty low, sometimes it may get up pretty good, I believe one time it was up to six or seven thousand dollars" and we pointed out that the ledger sheet was not filed in evidence. It is not shown there was a constant balance in an amount sufficient to cover the debt sued for. But if the contrary were true, we feel bound by the holding of the Supreme Court in the Edgington case, 179 Tenn. 83, 162 S. W. (2d) 1082, wherein it was said: "We wish to emphasize the fact that it is only in those cases where the action may be prosecuted without the necessity of personal service upon the defendants, and full relief granted, that the statute does not apply."

We found that the complainant did not have the legal right to apply the personal deposit of Sutherland to the payment of partnership obligations. This made it necessary to resort to legal action to obtain a personal judgment and "full relief", thus bringing into application the principle enunciated in the Edgington case. We cannot see any difference between the attachment of real estate, as in the Edgington case, and the attachment of money on deposit, as in the instant case. We very carefully considered the cases relied upon by the petitioner, but concluded they are to be distinguished from the

Edgington case for the reason noted. We adhere to that holding.

There are other matters discussed by petitioner. They were carefully considered by us in the formulation of our original opinion which we think meets the equities of the situation.

It results that the petition to rehear is denied.