Gulf Refining Company of Louisiana *v.* Huffman & Weakley.*

(*Jackson.* April Term, 1927.)

Opinion filed August 26, 1927.

1. **EMPLOYER. Employee. Independent contractor. Relation, how shown.**

Whether one is or not an independent contractor is often a mixed question of law and fact. Evidence is property admitted showing the dealings between the parties, their course of business, and authority exercised by employer. (Post, p. 582.)

2. **SAME. Same. Agency.**

An agreement may create a relationship not so like that of an independent contractor as of an agency. The power under such a relationship may be exercised wholly for the benefit of the principal, or with an interest on the part of the agent, but the relationship is none of the less than that of an agency. (Post, p. 586.)

Citing: Baldwin's Bouvier, p. 56.

3. **SAME. Same. Relation, how distinguished.**

It is the reservation of the right of control of essential details,

---

*As to who are independent contractors question for jury, see annotation in 65 L. R. A., 508; 17 L. R. A. (N. S.), 382; 14 R. C. L., 78; 3 R. C. L. Supp., 168; 4 R. C. L. Supp., 874; 5 R. C. L. Supp., 740; 6 R. C. L. Supp., 793.

On effect of surrender or retention of control of place of work as affecting character of one as independent contractor, see annotation in 20 A. L. R., 781; 14 R. C. L., 70; 3 R. C. L. Supp., 166; 4 R. C. L. Supp., 871.

On right to judgment **non obstante veredicto** because of failure of proof, see annotation in 12 L. R. A. (N. S.), 1021; L. R. A. 1916E, 828; 15 R. C. L., 606; 3 R. C. L. Supp., 474; 5 R. C. L. Supp., 844; 6 R. C. L. Supp., 925.

either express or implied, rather than the actual exercise of the right that distinguishes the relationship of responsible principal from that of independent contractor. In every case the decisive question is, had the defendant the right to control in the given particular the conduct of the person doing the wrong? (Post, p. 587.)

Citing: Thompson on Neg., 999; Powell v. Const. Co., 88 Tenn., 697; Standard Oil Co. v. Parkinson, 152 Fed., 682; Magnolia Petroleum Co. v. Johnson, 149 Ark., 553, 233 S. W., 680; Buchholz v. Standard Oil Co., 244 S. W., 973 (Kansas City Ct. App.); Angell v. White Eagle Oil Co. et al., 210 N. W., 1004 (S. C. of Minn.)

---

*Headnotes 1. Master and Servant, 39 C. J., section 1595; 2. Master and Servant, 39 C. J., section 1584; 3. Master and Servant, 39 C. J., section 1595; 4. Master and Servant, 39 C. J., section 1518; 5. Master and Servant, 39 C. J., section 1518.

### FROM DYER.

Appeal from Circuit Court of Dyer County to Court of Appeals and by *certiorari* to Supreme Court.—HON. R. A. ELKINS, Judge.

E. T. WEAKLEY and G. T. FITZHUGH, for defendant in error.

L. JESSE COOPER, for plaintiff in error.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

The petition for *certiorari* challenges a judgment for damages by fire resulting from alleged negligent handling of a gasoline truck, the storehouse of plaintiffs being destroyed. The jury found negligence on the facts and

the Court of Appeals has concurred in that finding, which practically concludes petitioner on this question in this court. However, the main reliance is upon another ground. The petitioner, Gulf Refining Company, insists that the truck was owned and its driver employed and controlled, not by it, but by one Overall, whose relation to it was that of an independent contractor; that the terms of its engagement of Overall were set out in a writing introduced; that the trial court erred in failing to hold this instrument to be determinative and in failing to construe it and instruct the jury as to its conclusive effect; that the question of the relations between the Company and Overall was thus one of law which should not have been submitted to the jury.

The trial judge and the Court of Appeals found that there was such evidence introduced of circumstances, conditions and relations, outside of the writing between the parties, as called for a submission to the jury of this practically controlling question. In this we concur.

Whether one is or is not an independent contractor is often on the record presented a mixed question of law and fact. It is so in this case. Evidence was properly admitted showing the dealings between the parties, their course of business, authority exercised by the Company, etc., etc. The written agreement, with certain pertinent language italicised by us, is as follows:

"THIS MEMORANDUM OF AGREEMENT made and entered into this 21st day of August, 1923, by and between the Gulf Refining Co. of Louisiana, party of the first part, and J. U. Overall, Jr., of Dyersburg, Tennessee, party of the second part.

"WITNESSETH:

"The party of the second part agrees to rent a ware-house at Dyersburg, Tenn., suitable for the storage of oils *rental of said warehouse to be paid by the said party of the first part.*

"Party of the first part agrees to *ship* to party of the second part Lubricating Oils, Illuminating Oils, and Gasoline, in carload lots, which shipments are to be received by the party of the second part and *sold by him at prices named by party of the first part*—all sales of such oils to be for *cash,* or, *if on credit, only to such parties as are acceptable to party of the first part and upon terms authorized by them.*

"Where first party *orders second party to sell on credit,* second party shall deliver a signed receipt, or in case the oil is shipped out of the city of Dyersburg, Tenn., second party will deliver an original bill of lading from the Railroad Company, which shall constitute a receipt.

"Party of the second part is to be responsible to the party of the first part for all goods shipped to him, and is to account for all sales in accordance with above paragraph, sending weekly a statement showing all sales made and remitting weekly to party of the first part, at their New Orleans office, all moneys received by him from sale of above named goods.

"Second party shall render to party of the first part statement on the first day of each month, showing in detail the goods on hand.

"Second party agrees to pay all drayage and delivery charges, and *collect all empty drums and barrels and ship same back to first party as ordered.*

"It is strictly understood that *all goods shipped* party of the second part by party of the first part *are the property of the party of the first part until sold.*

"On or about the first of each month, party of the first part will send to party of the second part, a statement showing the sales made by party of the second part during the preceding month, remitting party of the second part commission earned. On such sales, said commission to be two cents per gallon on Kerosene and Gasoline when sold in milk cans or tank wagons, and one and one-half cents per gallon when sold in original package such as drums, barrels, cans or cases, and ten per cent of invoice price on Lubricating Oils, where oil is delivered by party of the second part without payment of Railroad freight charges. Where shipments are made by Railroad, commission to party of the second part is to be one cent per gallon on Kerosene or Gasoline and ten per cent of the invoice on Lubricating Oils, and party of the first part is to allow party of the second part amount of freight paid on such shipments. An additional commission will be paid on Gasoline and Kerosene of one-half cent per gallon when sold and delivered outside the city limits of Dyersburg, Tenn., by wagon or truck of the party of the second part. *Party of the first part reserves the privilege of making shipments from its stock of goods in hands of second party,* and second party agrees to fill such orders as may be sent them by party of the first part—no commission to be allowed party of the second part on such shipments, but first party will pay second party one cent per gallon for drayage and clerical work in making such shipments.

"This contract may be terminated by either party upon ten days' written notice to the other party shall settle with the other in full, any and all amounts which may be due by either party to the other.

"This contract is signed in triplicate and is effective only when approved by General Sales Manager of first party.

"Gulf Refining Company of Louisiana.

"(Signed) by H. G. Meador,

"J. U. Overall.

"Approved:

"W. V. Hartmann,

"Asst. General Sales Manager."

It appears that the gasoline which ignited and caused the damage to the plaintiffs was the property of the Refining Company by the express terms of this written agreement, as was the tank from which the gasoline appears to have escaped. Moreover, the written contract contains recitals which clearly import reservations of directory rights in various respects.

The proof showed that the truck in question bore a State license issued to the Gulf Refining Company of Louisiana, and displayed the name and trade sign of that Company, and that no license had been issued to Overall for such a truck; that the official records showed *ad valorem* merchants taxes paid in Dyer County by the Gulf Company for the year 1925, and none paid by Overall; that the P. O. Box of the business was carried in the name of Gulf Refining Company, and other facts were proven tending to establish that the Oil and Gasoline business in which Overall was engaged was in fact the business of the Gulf Refining Company, or that the Gulf Refining Company was exercising direction and control of it; among these, that the rent of the store or warehouse in Dyersburg, from which distribution of gas was made by Overall, was paid by the Gulf Refining Company; that the driver of the truck immediately responsible for

the negligence alleged collected for the gasoline distrib-
uted by him in checks payable to the Gulf Refining Com-
pany, and issued to plaintiffs and other customers re-
ceipts signed in the name of that Company by himself,
thus plainly holding himself out as the Agent of that
Company; and that the gas pumps rented to plaintiffs
and other customers were the property of the Gulf Re-
fining Company, to whom rent therefor was paid. It ap-
pears, also, that the Gulf Refining Company is a foreign
corporation which had complied with our statutes and
thus obtained authority to do business in this State
through its agents.

We seem to have here a form of agreement which cre-
ates a relationship not so like that of an independent
contractor as of an agency, defined as, "a contract by
which one person, with greater or less discretionary pow-
er, undertakes to represent another in certain business
relations." Baldwin's Bouvier, p. 56. The power under
such a relationship may be exercised wholly for the bene-
fit of the principal, or with an interest on the part of the
agent, as was here the case, but the relationship is none
the less that of agency. Overall was held out and
generally recognized as the agent or representative of
the Gulf Refining Company, rather than as acting for him-
self in any independent sense, and we think the record
as a whole affords grounds for the conclusion of the
jury that such was in fact the relationship. While he
appears to have furnished some of the equipment em-
ployed in the business, and does not appear to have
been directed or controlled in some details of its opera-
tion, it is clear that he was controlled and directed in
certain important particulars, and in practical effect was
subject to the will and direction of his principal in any

respect as to which his principal might elect to exercise such control. Applicable to the negligence alleged, we think it apparent that the Gulf Refining Company was in a position to control the manner of the deliveries of its gasoline and to exact the use of safe equipment and the employment of responsible men, since the business was essentially that of the Company, the product sold being its gas, the pumps in use being its property and the payments made by the customers its funds. It was natural and indeed essential to the permanency of its business, to which Overall entertained a relationship terminable at its will, that its good will and its returns should be reasonably safeguarded.

It is the reservation of the right of control of essential details, either express or implied, rather than the actual exercise of the right, that distinguishes the relationship of responsible principal from that of an employer of an independent contractor. "In every case the decisive question is, had the defendant the right to control in the given particular the conduct of the person doing the wrong?" Thompson on Neg., 999, quoted approvingly by Mr. Justice LURTON in *Powell* v. *Const. Co.*, 88 Tenn., 697, who defines an independent contractor as "one who, exercising an independent employment, contracts to do a piece of work according to his own methods, and without being subject to control of his employer, except as to the result of his work." This is the leading definition adopted by Bouvier citing the Powell case.

We are convinced from the record as a whole that there was a reservation of right or power in the Gulf Refining Company to demand and enforce the use of equipment free from unsafe defects, and the use of prudent and responsible employees in the handling of its product—that

this right arose by necessary implication, being essential to its protection and success, and that it is therefore legally bound for the negligence here shown.

The opinions in the following cases, among others, will be found to support the views herein expressed: *Standard Oil Co.* v. *Parkinson,* 152 Fed., 682; *Magnolia Petroleum Co.* v. *Johnson,* 149 Ark., 553, 233 S. W., 680; *Buchholz* v. *Standard Oil Co.,* 244 S. W., 973 (Kansas City Ct. App.); *Angell* v. *White Eagle Oil Co. et al.,* 210 N. W., 1004 (S. C. of Minn.)

In all of the cases above cited the contracts called for the delivery of gasoline with the compensation fixed on a commission basis, the details as to the extent of control exercised varying with the facts of each case, but these courts all recognize that the test of liability is the right reserved to direct and control the representative rather than the extent of control in fact exercised in the given case. In these cases, as in the instant case, the conclusion is inescapable that the Oil Company, directly, or indirectly, kept itself in position to direct and control the delivery of its gas with respect to such a vitally important element as safety.

The conclusions thus announced being determinative of the instant case, it becomes unnecessary to pass upon the insistence further made of liability for negligence in the performance of work intrinsically dangerous, the handling of gasoline, despite the existence of the relationship of independent contractor. Whether or not the vendor of this high explosive could lawfully so delegate authority for its distribution, while continuing to own the product, as to relieve itself from responsibility for negligent handling, we think the jury was justified in

finding upon the record as a whole that it reserved to itself the power to exercise control to the extent necessary to guard against such neglignece.

The judgment of the Court of Appeals is affirmed.