**YOES et al. v. CONTINENTAL OIL CO. et al.**

District Court, W. D. Arkansas, Fort Smith Division.

Jan. 4, 1934.

G. L. Grant and G. T. Sullins, all of Fort Smith, Ark., for plaintiffs.

Warner & Warner, of Fort Smith, Ark., for defendants.

RAGON, District Judge.

The complaint of the plaintiffs joins the Continental Oil Company, N. H. Meads, and Fred Couch as defendants in this action. They allege that Meads was the agent and at all times employed by the defendant oil company in the management and distribution of its products from its office at Fayetteville, Ark., and, as such, directed and supervised the sale and delivery of the oil products under the instructions of the defendant oil company; they allege that the defendant Fred Couch was at all times in the employ of the defendant oil company, under the direct supervision of Meads, and was engaged in the distribution of the products of the defendant, and in so doing drove the truck of the defendant oil company, equipped with a large tank for the hauling of oil products of said company, which at the time of the alleged injury was being used by Couch for the purpose of delivering such products in Washington county, as directed by Meads.

The complaint further alleges that at the time of the accident the defendant Couch was in the course of his employment by the oil company and under the direction of Meads, and was driving the truck in a negligent manner, and in attempting to pass around the car in which the plaintiffs were driving he struck the front part of plaintiff's car, causing it to leave the road and run into a ditch, injuring the plaintiffs as specified in the complaint. The complaint alleges that, while driving in this negligent and careless manner, the defendant Couch was an employee of the oil company and operating said truck under the direction and supervision of Meads, and was acting in the line of duty, having delivered oil products of said oil company, and was returning therefrom.

A petition for removal from the Washington circuit court was filed by the Continental Oil Company, which petition was granted, and the case was removed to the Fort Smith Division of the Western District of Arkansas. The plaintiffs thereupon filed a motion in this court to remand the cause to the Washington circuit court.

The question to be determined is whether or not there was a fraudulent joinder of the defendants Meads and Couch with the Continental Oil Company upon the part of the plaintiffs. Therefore it is necessary to determine whether there was a joint liability of the defendants as stated in the complaint.

The Supreme Court of Arkansas, in an opinion delivered by Mr. Justice Smith in the case of Magnolia Petroleum Co. v. Johnson, 149 Ark. 553, 233 S. W. 680, 681, has passed upon facts similar to the facts involved in this case. In the Johnson Case the Magnolia Petroleum Company made a contract with one J. N. Smith, who was in the transfer business at Searcy, for the distribution and delivery of its oil products from its place of business in Searcy. The company supplied the containers for the oil and gasoline, while Smith, in consideration of the commissions paid, used the teams, wagons, and drivers employed by him in his transfer business. The company was not consulted in the employment or discharge of these men, whose wages were fixed and paid by Smith. One of these drivers, in delivering gasoline to the plaintiff, Johnson,

through careless and negligent handling of the gasoline, caused the barn of Johnson to be set afire and burned.

One section of the contract between Smith and the company contained the following recitals: "It is expressly understood and agreed that the above rates of commission apply on sales made by agents, and the commissions to apply on sales made by salesmen, managers and others, and the commissions to apply on transfers between agencies, on home office contracts and on railroad contracts, are allowed as full compensation to agent for service to be rendered in connection with the proper handling of the company's business in territory assigned to the agency. The duties of the agent in return for said compensation, includes the proper care of stock placed in his charge, storage tanks, warehouse and other equipment, soliciting and carrying on business under the direction of the division manager, and other authorized representatives, and the making of deliveries, the collecting of accounts, the making of reports required, unloading cars, and such other services as may be required for the proper conduct of the business."

Another section of the contract provides that " * * * The company shall furnish, free of charge, all forms, stationery and postage for the proper conduct of the business, and that all other items of expense shall be assumed by the agent, Smith."

In construing this contract the court held: "The majority of the court are of the opinion that the facts stated made a case for the jury, and that the contract between the company and Smith created the relation of principal and agent, and that the company had reserved the right to control and direct the manner of making deliveries of oil, and that, while no directions were given in the particular instance as to the manner of delivering the oil to appellee, which caused the fire that destroyed the barn, the company had reserved the right of direction; and, in the discharge of all duties, whether performed by Smith himself or by men employed by him, in selling and delivering the oil, the work done was that of the company."

The test of joint liability as laid down in this case was stated as follows: "The test is, not whether the company actually directed the manner of the delivery of the oil, but is whether the company had the right to control the delivery."

A majority of the court held that there was a joint liability between the driver of the truck which delivered the oil and the Magnolia Petroleum Company.

In the present case we find a written contract existing between the Continental Oil Company and the defendant N. H. Meads. This contract has the following provisions:

"This agreement, made by and between Continental Oil Company, hereinafter called the 'Company' and N. H. Meads, hereinafter called 'Representative':

"(1) Representative, for the consideration hereinafter stated agrees to take charge of plant and stock of the Company at Fayetteville, Arkansas, and perform the following duties:

"(C) Solicit orders and make deliveries to the trade, take receipts from all parties to whom deliveries are made, reporting the receipt, delivery and shipment of stock according to instructions from the Company, and satisfactorily account for all stock intrusted to him.

"(E) Faithfully transact the business in his charge and make reports, all in accordance with this agreement and instructions from the Division Manager of the Company at Ponca City, Oklahoma."

Following these provisions are listed the amounts of commission which the agent, Meads, was to receive for selling and delivering the different products of said company to twenty-three different places in the vicinity of Fayetteville. The commissions varied according to the distance of the different delivery points from the city of Fayetteville; many of the points being a distance of above twenty miles, one being so far as twenty-seven miles from Fayetteville.

Following these stipulations for commissions in the contract is section No. 3 of the contract, which reads as follows: "The company will furnish the representative with all forms, required in the transaction of said business, and will pay him said compensation promptly upon adjustment of monthly accounts, except as otherwise herein provided."

Another section, No. 5, reads as follows: "Representative agrees to give such bond as is required by the Company with a surety company designated by the Company as a surety, and to procure public liability insurance and property damage insurance covering all automotive equipment used by him in the performance of this agreement, in the amount of not less than $10,000.00 for each accident for injury or death of one person injured or killed, and the amount of not less

than $20,000.00 where more than one person is injured or killed in the same accident, and said property damage insurance to be in the amount of not less than $5,000.00 for each accident. Such insurance policy or policies shall be in a company or companies approved by the Company, and insurance policy or policies approved by it shall be delivered to the Company, and shall provide that loss shall be payable to the Representative and/or the Company, as the Company may desire."

I am unable to distinguish any material difference between the contract in the Johnson Case and the contract in the pending case.

The affidavits of Irish, Meads, and Couch were offered by the defendant in an effort to show the construction of the terms of their contract by the company and by the agent, Meads. The court feels that the terms of the contract in this case are as plain and unequivocal as the terms of the contract in the Johnson Case, and that by the terms of this contract the question of fraudulent joinder of the parties must either stand or fall.

I have read the able brief presented by counsel for the defendant Continental Oil Company, but I am unable to distinguish between the joint liability set up under the contract in the case of Magnolia Petroleum Co. v. Johnson, supra, and the joint liability as set up in the pending case. Certainly, if under the contract in the case of Magnolia Petroleum Company v. Johnson the company controlled or reserved the right to control in their contract the delivery of their products—which Justice Smith in his opinion holds is the supreme test—then the Continental Oil Company under the contract in this case and the allegations of the complaint controls the delivery of the products of its company which came into the hands of Meads.

If there is a joint liability upon the part of the Continental Oil Company and Couch, then Couch is not a "sham" defendant, and cannot be said to have been fraudulently joined. The Supreme Court of Arkansas in the case of Magnolia Petroleum Company v. Johnson has said upon the same state of facts that there was a joint liability between Couch and the Continental Oil Company.

I am not unmindful of the decision in the Texas Company v. Brice (C. C. A.) 26 F.(2d) 164, and that it was rendered in the face of a Tennessee decision, which in many respects was similar to the case of Magnolia Petroleum Co. v. Johnson. However, in the Brice Case the court said that they were not sure that the case was contrary to the Tennessee deci-

sion in the Gulf Refining Company v. Huffman & Weakley, 155 Tenn. 580, 297 S. W. 199. However, the Brice Case was appealed and brought before the court on the question of whether or not the lower court should have directed a verdict; the court holding that a verdict should have been directed. In the pending case the question for this court to decide is whether or not there was a fraudulent joinder of defendants Meads and Couch. If there was a joint liability upon the part of the defendants, then there was no fraudulent joinder.

While by no means conclusive, it would seem the fact that the defendant Meads had to make deliveries of oil at so many places in widely scattered sections of the county, that the necessary implication arises that the company knew he would have to use some one in making these deliveries. The names of the places of delivery and their distances from Fayetteville are written in the face of the contract.

The provision of the contract providing for liability insurance, "* * * covering all automotive equipment used by him (Meads) in the performance of this agreement, * * *" would indicate that the company not only reserved the right to control the delivery, but to also control the manner of delivery.

It is urged by able counsel for the defendant that the general law and not the state law should prevail in considering whether or not this case should be remanded. I cannot agree with this view, since the matter to be determined is whether or not there was a joint liability, and, if the Supreme Court of Arkansas has held that there was joint liability in an identical case, then it could not be said that there was a "sham" or fraudulent joinder. Authorities may be found holding to both views, but I think on the question of the motion to remand where the question of joint liability is involved the majority of the opinions hold that the state laws govern. The state laws have been construed as not only the statutes, but the decisions of the highest courts of the state as well. Chicago, R. I. & P. R. Co. v. Schwyhart, 227 U. S. 184, 33 S. Ct. 250, 57 L. Ed. 473; So. R. Co. v. Miller, 217 U. S. 209, 30 S. Ct. 450, 54 L. Ed. 732; McFarland v. B. F. Goodrich Rubber Co. (C. C. A.) 47 F.(2d) 44; Chesapeake & O. R. Co. v. Cockrell, 232 U. S. 146, 34 S. Ct. 278, 58 L. Ed. 544.

Therefore, the court being of the opinion that a joint liability is stated in plaintiffs'

complaint and that there was no fraudulent joinder of the defendants Meads and Couch, with the defendant Continental Oil Company, the motion to remand is sustained, and the case will be remanded to the Washington circuit court.