IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 17, 2009 Session

**RENEE L. JOHNSON. v. GRAYSON  ROWSELL, ET AL.**

**Direct Appeal from the Circuit Court for Jackson County**
**No.  1796-P-44     John D. Wootten, Jr., Judge**

———————————

**No. M2009-00731-COA-R3-CV - Filed October 27, 2009**

———————————

This is a summary judgment case arising from a personal injury lawsuit.  Plaintiff/Appellant alleged liability on the part of Appellee delivery company arising from the negligent acts of its driver. Finding that the driver was an independent contractor, and that the exceptions to the general rule of non-liability on the part of the employer of an independent contractor do not apply in this case, we affirm the grant of summary judgment in favor of Appellee delivery company.


**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. STEVEN STAFFORD, J., delivered the opinion of the court, in which ALAN E. HIGHERS, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Michael B. Schwegler, Bart Durham and Blair Pierson Durham, Nashville, Tennessee, for the Appellant, Renee L. Johnson.

William B. Jakes, Nashville, Tennessee, for the Appellee, Express Courier International, Inc.

**OPINION**

The material facts of this case are not disputed.  On December 14, 2006, Appellant Renee L. Johnson was injured when she was struck by a 2004 GMC Safari that was operated by Grayson Rowsell.  The vehicle involved was owned by Grayson Rowsell's father, Eddie Rowsell.  At the time of the accident, Ms. Johnson was directing traffic in the scope of her employment with the Tennessee Department of Transportation, which was performing construction work on Highway 85 in Jackson County, Tennessee.

On January 23, 2007, Ms. Johnson filed her initial complaint against Grayson Rowsell, Eddie Rowsell, and Express Courier International, Inc. ("ECI").  An amended complaint was filed on May 23, 2008.  Ms. Rowsell alleged that Grayson Rowsell was guilty of negligence in the operation of the vehicle, and that Eddie Rowsell was vicariously liable for his son's negligence as the registered

owner of the vehicle. Concerning ECI's liability, the complaint alleged that Grayson Rowsell was "an authorized agent and/or representative of...[ECI], doing the business of...[ECI], and in the scope of employment with...[ECI]...." such that ECI should be held vicariously liable for Grayson Rowsell's negligent acts. On March 2, 2007, ECI filed its answer, in which it denied that it was the employer of Grayson Rowsell. ECI specifically asserts that Grayson Rowsell "was an independent contractor at all times pertinent to the occurrence which is the subject of this case." On March 5, 2007, Grayson Rowsell and Eddie Rowsell filed a joint answer, in which they denied the material allegations of the complaint.

ECI initially filed its motion for summary judgment on November 8, 2007. However, a final hearing on the motion was postponed pending additional discovery. On August 2, 2008, Eddie Rowsell also filed a motion for summary judgment. The motions for summary judgment were heard on January 26, 2009. On February 6, 2009, the trial court entered an order granting summary judgment in favor of Eddie Rowsell. No appeal was taken from this order. By order of February 11, 2009, the trial court granted summary judgment in favor of ECI, specifically finding that there was no dispute of material fact and that ECI was entitled to a judgment as a matter of law. On March 26, 2009, the trial court entered an order on Ms. Johnson's motion for interlocutory appeal, in which the orders granting summary judgment were made final and appealable pursuant to Tenn. R. Civ. P. 54.02. Ms. Johnson appeals only the grant of summary judgment in favor of ECI, and raises four issues for review as stated in her brief:

> 1. Can a package delivery company avoid liability to a third party injured due to negligence of a delivery driver based solely upon a written independent contractor agreement?
> 2. Does the package delivery business involve risk recognizable in advance of physical harm to others that is inherent in the delivery work itself, such that the company is liable to a pedestrian injured when negligently struck by a delivery driver?
> 3. Did ECI affirmatively negate all necessary elements of each of plaintiff's theories of recovery pled in plaintiff's first amended complaint?
> 4. Did the plaintiff demonstrate triable issues of material fact sufficient to defeat ECI's motion for summary judgment?

We perceive that the gravamen of this appeal is whether Grayson Rowsell was an independent contractor or an employee of ECI. We first note that a trial court's decision to grant a motion for summary judgment presents a question of law. Our review is therefore *de novo* with no presumption of correctness afforded to the trial court's determination. ***Bain v. Wells***, 936 S.W.2d 618, 622 (Tenn.1997). In evaluating the trial court's decision to grant summary judgment, we review the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. ***Mooney v. Sneed***, 30 S.W.3d 304, 305-06 (Tenn. 2000); ***Byrd v. Hall***, 847 S.W.2d 208, 210-11 (Tenn. 1993).

When a motion for summary judgment is made, the moving party has the burden of showing that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. If the moving party's motion is properly supported, "[t]he burden of production then shifts to the nonmoving party to show that a genuine issue of material fact exists." *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 5 (Tenn. 2008) (citing *Byrd*, 847 S.W.2d at 215). In order to shift the burden of production, "the moving party must either affirmatively negate an essential element of the nonmoving party's claim or establish an affirmative defense." *Hannan*, 270 S.W.3d at 5. However, "[i]t is not enough for the moving party to challenge the nonmoving party to 'put up or shut up' or even to cast doubt on a party's ability to prove an element at trial." *Id*. at 8. Instead, the moving party has the more difficult task of demonstrating "that the nonmoving party cannot establish an essential element of the claim at trial." *Id*. at 7.

### Independent Contractor

Tennessee courts have defined an "independent contractor" as:

> [O]ne who, exercising an independent employment, contracts to do a piece of work according to his own methods and without being subject to control of his employer, except as to the result of his work.... Mr. Thompson, in his work upon Negligence, says that "in every case the decisive question is, Had the defendant the right to control in the given particular the conduct of the person doing the wrong?" Thompson on Negligence, 909.

*Potter v. Tucker*, 688 S.W.2d 833, 836 (Tenn. Ct. App. 1985) (citing *Powell v. Virginia Construction Co.*, 13 S.W. 691 (Tenn. 1890)). As a general rule, an employer is not ordinarily liable for the negligence of an independent contractor. *Potter*, 688 S.W. 2d at 835-36.

In determining whether a person is an independent contractor, our Supreme Court has outlined certain factors that should be considered. These factors include, but are not limited to, the following:

1. The right to control the conduct of the work;
2. The right of termination;
3. The method of payment;
4. The freedom to select and hire helpers;
5. The furnishing of tools and equipment;
6. The self-scheduling of work hours; and
7. The freedom to render services to other entities.

*Beare Co. v. State*, 814 S.W.2d 715, 718 (Tenn. 1991) (citing *Masiers v. Arrow Transfer & Storage Co.*, 639 S.W.2d 654, 656 (Tenn.1982)).

Turning to the record, Joi Schurman, CFO of ECI, testified that ECI is an intra-/inter-state delivery company that operates pursuant to the authority issued by state and federal regulatory agencies including the Tennessee Department of Revenue and the U.S. Department of Transportation. At the time of the accident, ECI employed over 700 drivers who worked out of 26 locations in the southeastern United States. Most of these drivers, including Grayson Rowsell, were required to sign an "independent contractor agreement." The agreement provides, in pertinent part, as follows:

> CONTRACTOR NOT EMPLOYEE OF CARRIER. It is expressly understood and agreed that CONTRACTOR is an Independent Contractor providing the Equipment and services to customers of CARRIER pursuant to this Agreement. The parties further recognize that CONTRACTOR has a significant financial investment in the Equipment and the driver services provided herein, and that CONTRACTOR has the exclusive right to direct and control the financial aspects of CONTRACTOR'S business operations, including the ability to earn a profit under this Agreement.

(Emphasis in original). While we concede that the existence of this agreement does not mandate a finding that Grayson Rowsell was an independent contractor, Mr. Grayson's own testimony supports this conclusion:

> Q [to Grayson Rowsell]. You provided your own vehicle?
>
> A. Correct.
>
> Q. And you maintained it, provided the gas, the insurance, and any maintenance it needed?
>
> A. Correct.
>
> Q. And you were responsible for control in the financial aspects of your business, weren't you?
>
> A. Correct.
>
> Q. You were asked about the routes and the times and expectations. You could choose your route, couldn't you? If a route was available, you could bid on it or try to get it or whatever [] the process was?
>
> A. Yes, I could.

-4-

Q. And if you wanted to hire your own helper, you could have done that as long as they complied with the contractual agreement that you had with [ECI]?

A. I'm sure, yes.

Q. You weren't required to take other work that was offered to you, were you?

A. No.

Q. And you understood that you were not an employee of [ECI]?

A. To my knowledge, yes.

Q. And you were shown a document that is part of what I gave you, the package that I put in front of you?

A. Uh-huh.

Q. There were certain things that you were asked about that you were given the option of providing yourself?

A. Yes.

Q. Different types of insurance including cargo insurance, worker's compensation insurance. You had the option of providing that yourself or paying [ECI] to provide [it] for you?

A. Correct.

Q. And that was a voluntary decision on your part, you weren't influenced in any way were you?

A. No.

Q. You never had any complaints or violations or problems during the time that you worked for [ECI] between the time you started and the time of the accident?

A. None that I was ever made aware of, no.

From our review of the record, Mr. Rowsell's testimony is undisputed. Giving Ms. Johnson every inference, the only control that ECI appears to have had over Mr. Rowsell were the following requirements:

      1. To make his pick-ups and deliveries on time;
      2. To submit route and delivery reports while under revenue loads;
      and
      3. To comply with all applicable laws and regulations.

Under the **Beare Co. v. State** factors, *supra*, these three areas of "control" do not negate Mr. Rowsell's testimony. In the case of **Masiers v. Arrow Transfer & Storage Co.**, 639 S.W.2d 654 (Tenn. 1982), our Supreme Court addressed the question of whether plaintiff Masiers, who had filed a claim for worker's compensation benefits against the defendant Arrow Transfer, was an independent contractor. Mr. Maisers argued that he was an employee of Arrow, as opposed to an independent contractor, and was therefore entitled to worker's compensation benefits. In affirming the trial court's finding that Mr. Maisers was, in fact, an independent contractor, our Supreme Court reasoned:

> The chancellor considered the several indicia previously enumerated by this court and concluded from the work relationship as a whole, that appellant was an independent contractor. In our opinion, the evidence supports his conclusion. The right of control by appellee over the conduct of appellant's work existed only as to results. Appellant furnished the tractor, which he owned outright, having obtained no financial assistance from appellee in making the purchase. He provided all maintenance, materials, tools, and labor for the upkeep of the tractor. He was responsible for cargo shortages and damages on his loads, his own fuel bills, and his out-of-town living expenses. He was responsible for reporting his own income and social security taxes. He had the right to set his own hours. He was free to hire his helpers as he saw fit, subject only to their qualification if they were to drive appellant's tractor. Further, appellant had the right to decide whether or not to accept a given cargo for delivery. These options are incompatible with an employer-employee relationship, but are compatible with the existence of an independent contractor relationship.

*Maisers*, 639 S.W.2d at 656. Likewise, in the case at bar, the few "controls" that ECI exercised over Mr. Rowsell were nominal. However, like the plaintiff in *Maisers*, Mr. Rowsell provided his own vehicle, and maintained that vehicle himself. Moreover, Mr. Rowsell testified that he could choose his own routes, and was free to hire help as he saw fit. This testimony, coupled with the existence of the independent contractors agreement, and the relatively small amount of control ECI exercised over its drivers, leads us to conclude that the trial court did not err in finding that Grayson Rowsell

was, in fact, an independent contractor. The question then becomes whether Mr. Rowsell's relationship with ECI falls into one of the exceptions to the general rule of non-liability on the part of the employer of an independent contractor.

## Exceptions to Non-Liability

The Restatement (Second) of Torts lists numerous exceptions to the non-liability principle, grouping them into three broad categories: (1) exceptions based on the employer's negligence in selecting, instructing, or supervising the independent contractor, (2) exceptions based on non-delegable duties the employer owes to the public in general or to the plaintiff in particular, and (3) exceptions based on work that is specifically, peculiarly, or inherently dangerous. Restatement (Second) of Torts § 409 cmt. b. Concerning the first exception, the Restatement (Second) of Torts § 410 specifically provides that:

> The employer of an independent contractor is subject to the same liability for physical harm caused by an act or omission committed by the contractor pursuant to orders or directions negligently given by the employer, as though the act or omission were that of the employer himself.

The Tennessee Supreme Court has recognized this exception as the chief exception to the non-liability principle. ***Givens v. Mullikin***, 75 S.W.3d 383, 394 (Tenn. 2002). Employers are not liable under this section if they neither knew nor should have known that the work involved an unreasonable risk of harm to others when they gave their orders or instructions. However, an employer will be liable if, having been informed of a risk that the contractor has discovered, it requires the contractor to carry out its original orders or instructions. Restatement (Second) of Torts § 410 cmt. c.

In her amended complaint, Ms. Johnson alleges additional theories of liability against ECI, which include "negligent supervision, entrustment, and hiring." The primary argument in support of these claims was that ECI breached a duty to test Mr. Rowsell for drug use. On May 6, 2008, the parties took the deposition of Tennessee Highway Patrol Trooper Mike Phillips. Trooper Phillips testified that, when he arrived at the scene of the accident, Mr. Rowsell appeared normal and that no drugs or alcohol were present. Trooper Phillips testified that Mr. Rowsell passed all field sobriety tests given at the scene. According to Trooper Phillips, Mr. Rowsell did not have bloodshot eyes, and did not slur his words. At the scene, Mr. Rowsell consented to a blood test. Trooper Phillips produced a copy of an "Official Toxicology Report," dated January 19, 2007. The report reflects a finding of "mari[j]uana metabolite" and "diazepam;" however, after the test results were known, no charges were filed against Mr. Rowsell.

In support of her claim that ECI was guilty of negligent supervision, entrustment, and hiring of Mr. Rowsell, Ms. Johnson offered the testimony of toxicologist, Howard S. Taylor. However, Dr. Taylor testified that the only "policy" that ECI did not comply with was an internal, unwritten

policy, which was not required by state of federal law. The record reveals that ECI's "policy" was to drug test those drivers who delivered pharmaceuticals. Drug tests on these drivers were performed at the time the initial contract was entered, and randomly thereafter. Because Mr. Grayson did not initially contract to deliver pharmaceuticals, he was not tested at the time he signed the independent contractor agreement. Although Mr. Grayson did became a pharmaceutical delivery driver shortly after he signed the agreement, at the time of the accident, he had only been a contractor with ECI for approximately four months; ECI testified that Mr. Rowsell had not been selected for random testing given his relatively short tenure with the company. However, as Dr. Taylor correctly notes, even if a drug test had been performed on Mr. Grayson at the time he initially contracted with ECI, it would be purely a matter of speculation as to what the results would have been. More importantly, a drug test performed at the time of the initial contract would not bear on the question of whether Mr. Rowsell was under the influence at the time of the accident. From Trooper Phillips' testimony, it appears that, at the time of the accident, there was no indication that Mr. Rowsell was under the influence of either drugs or alcohol. And despite the findings of the January 19, 2007 toxicology report (*supra*), no charges were filed against Mr. Rowsell. Moreover, from the record as a whole, there is no indication that Mr. Rowsell demonstrated signs that should have alerted ECI to take action. In fact, the record indicates that Mr. Rowsell was properly licensed and insured, that he had not been involved in any prior accidents, and that there had never been any complaints or problems concerning his work.

The Restatement (Second) of Torts § 414 provides:

> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

Tennessee courts have recognized this exception implicitly by emphasizing the central importance of the right to control when determining whether a person is an employee or an independent contractor. ***See, e.g., Gulf Ref. Co. of La. v. Huffman & Weakley***, 297 S.W. 199, 200-201 (Tenn. 1927). This exception usually applies to general contractors who have entrusted part of their work to subcontractors but who supervise the entire job. Restatement (Second) of Torts § 414 cmt. b. For this exception to apply, the employer must have retained sufficient control that the independent contractor is not entirely free to perform the work in his or her own way. Restatement (Second) of Torts § 414 cmt. c. In the instant case, there is simply no indication that ECI exercised sufficient control over Mr. Grayson so as to be held liable under this exception. Other than the three requirements imposed by ECI *supra*, Mr. Grayson was completely autonomous in his job.

The Restatement (Second) of Torts § 427 provides:

> One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to

know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger.

The exception applies when the contractor is performing work that involves risk, recognizable in advance, of physical harm to others that is inherent in the work itself or in the usual or prescribed way of doing the work. Restatement (Second) of Torts § 427 cmt. b; *see also Powell v. Virginia Const. Co.*, 697, 13 S.W. 691, 692 (Tenn. 1890); *Potter v. Tucker*, 688 S.W.2d 833, 836 (Tenn. Ct. App.1985). The risk must be one that should be reasonably anticipated at the time of the contract. Restatement (Second) of Torts cmt. d; *McHarge v. M.M. Newcomer & Co.*, 100 S.W. 700, 704 (Tenn. 1907) (noting that the risks must be ones that should be reasonably anticipated). It is clear from several of the illustrations provided by the Restatement (Second) of Torts that this exception is not limited to work that is abnormally dangerous or that carries with it a high degree of risk of harm to others.[1] That being said, Ms. Johnson's only argument concerning this exception is that "delivery work [is] necessarily attended with danger to others." However, Ms. Johnson provides no specificity concerning this claim, but instead relies upon the case of *Waggoner Motors, Inc. v. Waverly Church of Christ*, 159 S.W.2d 42 (Tenn. Ct. App. 2004). In *Waggoner*, the court determined that a church was liable for the negligence of a painter hired to spray paint outside on a windy day, which resulted in damage to the adjoining landowner's property. The facts of *Waggoner* clearly fall into the Restatement (Second) of Torts §427 exception, especially in light of the illustration given in cmt.d thereto, *see* fn. 1 *supra*. Ms. Johnson also relies upon the case of *Potter v. Tucker*, 688 S.W.2d 833 (Tenn. Ct. App. 1985). *Potter* involved the cutting of timber by a contractor on an adjacent landowner's property, and clearly implicates the exception outlined in the Restatement (Second) of Torts § 414A.[2] In short, neither *Waggoner* nor *Potter* are analogous to the case at bar. Ms. Johnson has not provided, nor can this Court find, any case law to support a finding that the act of driving a delivery van is any more dangerous than the daily act of driving a motor vehicle.

**Independent Duty**

---

[1] A employs B, an independent contractor, to paint the wall of his building above the public sidewalk. In the course of the work a workman employed by B drops his paint bucket, which falls upon C, a pedestrian, and injures him. The danger is inherent in the work, and A is subject to liability to C. Restatement (Second) of Torts § 427 cmt. d, illus. 1

[2] The Restatement (Second) of Torts § 414A provides:

A possessor of land who has employed or permitted an independent contractor to do work on the land, and knows or has reason to know that the activities of the contractor or conditions created by him involve an unreasonable risk of physical harm to those outside of the land, is subject to liability to them for such harm if he fails to exercise reasonable care to protect them against it.

In her brief, Ms. Johnson asserts that ECI's "failure to follow [its] drug screening policies is direct negligence." As discussed above, Ms. Johnson's expert Dr. Taylor testified that ECI's internal policy concerning drug screening was not required by any state or federal law. In the case of *Giggers v. Memphis Housing Authority*, No. W2006-00304-COA-R3-CV, 2007 WL 2216553 (Tenn. Ct. App. 2007), *reversed on other grounds*, 277 S.W.3d 359 (Tenn. Feb 03, 2009), the plaintiff filed suit for damages based upon a criminal assault that occurred on the premises of the defendant housing authority. As in the instant case, the *Giggers* plaintiff argued that the housing authority's internal policies concerning screening of tenants/applicants created a legal duty to the plaintiff. The trial court disagreed, holding that "Tennessee cases have not found internal policies to create a legal duty and have even questioned whether internal policies are admissible for any purpose whatsoever." *Giggers*, 2007 WL 2216553, at \*4 (citing *Gibbs v. Robin Media Group*, 2000 WL 1207201, \*3 (Tenn.Ct.App.2000)). Based upon this finding, the trial court granted summary judgment in favor of the defendant housing authority, and this Court affirmed. We can find no authority that establishes that an internal policy creates a legal duty to the public at large. However, even if we were to find that ECI's internal drug testing policy created a duty, there is simply no proof in the record that a breach of this duty was the cause of the accident.

For the foregoing reasons, we affirm the order of the trial court, granting summary judgment in favor of ECI. Costs of this appeal are assessed against the Appellant, Renee L. Johnson, and her surety.

_____
J. STEVEN STAFFORD, J.